AARON ALEXANDER, plaintiff in error, *vs.* JAMES W. HERRING *et al.*, administrators, defendants in error.

1. A purchaser of property at administrator's sale, who has failed to comply with the terms of sale, and who is sued for the "deficiency of the proceeds of a second sale," cannot set up as a reason for his non-compliance that the property (a city lot) was sold by the front foot, and that he made a mental mistake as to what his bid would amount to.

2. The measure of damages in a suit by an administrator, against a purchaser at his sale, "for the deficiency" in the amount of a second sale, is what must be added to the amount of the second sale, to put the administrator in the same position as if the defendant had fully complied with his bid.

2. Under the facts of this case there was no error in the charge of the court, and the verdict is sustained by the evidence.

Administrators and executors.    Sales.    Damages.    New trial.    Before Judge HOPKINS.    Fulton Superior Court. March Term, 1874.

This was a suit brought to recover of Alexander the difference between two bids on a city lot, on Marietta street, in Atlanta, knocked off to him at administrator's sale, and sold the second time at his risk.    At the first sale the property was knocked off to Alexander at $160 00 per front foot, amounting to $8,000 00.    At the second sale it was again knocked off to Alexander for $140 00 per front foot, or about $7,000 00.    The defendant pleaded the general issue. There had been another suit in the same court on the purchase money notes given for the bid at the last named sale. To this suit the defendant had pleaded that he bought the property subsequent to April 1st, and that it was encumbered by a lien of $80 00, taxes due on it by the administrators; and to avoid delay, there was an agreement that he have a credit for the amount of said taxes on the notes, but with the right reserved to the plaintiffs to litigate their liability to such deduction when the trial of this case should come on. The proof was that the land was advertised the requisite number of times, and was brought to sale on the first occasion on sale day, in February, 1869.    The advertisement stated the terms of sale to be one-third cash, one-third in four, and balance in eight months.    Adair was auctioneer, and cried the property.

Angier and Leyden both testified, in substance, as follows: They bid on the property; Angier said he bid with an intention to buy; Leyden said he did not desire to buy; the circumstances in life of both, and of the other heirs also, were such as to render them responsible for such a purchase; it was understood among the heirs that any of them might bid who chose to do so; there was a very good crowd; the bidding was spirited; continued a good while, and the property sold reasonably low.

Angier testified that Alexander refused to comply with his

bid; that he did not know if it was a refusal at first; that in five minutes after the sale Alexander came and said the lot came to more than he calculated, and he did not know whether he could take it or not; that he said it came to' more than he had money to pay.

It further appeared that Alexander was asked and refused to comply with his bid, and this was the reason of the second sale; that the property was re-advertised and brought to sale on sale day, in the month of May, 1869; that this time the advertisement, published in the newspaper, recited the terms of sale to be with interest on the two last payments, and at said second sale, Alexander, the defendant, bid it off at $7,000 00. Adair proved expense of second sale to be $18 00 to $20 00, besides $10 00 to auctioneer, and that it was best for the estate to have an auction.    Leyden proved that second sale was advertised in three papers, that would be $60 00.    When giving in taxes by the administrators, the claim on Alexander was estimated at $8,000 00, and they thus paid to the city $10 00, as tax on amount of difference of the two sales.

The defendant testified that he was a bidder at the first sale; that he was certain Mr. William Herring, one of the plaintiffs, and Doctor Angier, and he thought Leyden, also, bid against him; that they run it up to the last dollar; that he was not accustomed to buying property or estimating it by the front foot; that the reason he run it so high the second time was because he thought it would avoid litigation.    On cross-examination he testified as follows:    Did not recollect who bid against him at the second sale, but thought it was Doctor Angier—couldn't say positively.    He had a map like that on the hand-bill shown him at the first sale; did not remember what was his first bid; there must have been some bidding in advance of him; does not know how long the auctioneer was crying the property after he began to bid; Adair delayed for a long time; he was taking dollar bids. Did not know when he commenced bidding on it; thinks William Herring was one of the administrators; bid $159 00 per foot before the defendant bid last; don't recollect what it

Alexander *vs.* Herring *et al.*

was at when he commenced bidding; he had been a business man all his life—a merchant, a druggist; would not claim that he was an experienced business man; has lived by trade all his life; never had any other pursuit than to make trades. The auctioneer knocked this lot off to him at $160 00 per foot. At the second sale he knocked it off to him at $140 00 per foot. He spoke right on the spot to Doctor Angier to relieve him from the case, as he had not the ability to pay for it. Did not know how much it came to; there was a large crowd there, and it might sell for as much again if put up again. Angier replied he was not authorized to do so. When he spoke to Dr. Angier they might have been selling another lot, probably they were.

1. The defendant offered to prove that in bidding for the land by the front food, at the first sale, he made a mistake in his calculation as to how much the aggregate amount would be, and that the aggregate amount of his bid for the whole lot was greatly more than he had, by mistake, estimated it; that he had no previous knowledge or experience of the value of property by the front foot, and the aggregate value of the whole lot was the basis he estimated, by which he made his bid; that if he had known how much it came to he would not have made the bid; that immediately, and within a few minutes after the land was knocked off to him, he informed the administrators of his mistake, and refused to be bound by his bid, and that by reason of his mistake he never did consent to the purchase of the land at the aggregate sum for which he was charged. This testimony was objected to, ruled out by the court, and defendant excepted.

2. The defendant further offered to prove that for some time previous to the sale, he had an affection of his head, manifesting itself in giddiness and vertigo, which, after the sale, culminated in congestion of the brain, and for a long time prostrated him in mind and body. That by reason of this affection, at the time of the first sale, his mind was not so clear and capable of making calculations as it was in health, and that on that account he was more liable to make a mis-

take in his calculations as to what was the aggregate amount he was bidding for the land at so much per front foot. This was objected to, ruled out by the court, and defendant excepted.

3. It was further in proof, that the defendant had been compelled to pay the city taxes assessed on April 1st, 1869, between the two sales, but had retained a like sum from the amount of his bid at the second sale. The court charged the jury that the taxes which accrued on the land between the two sales, and which had been paid by the plaintiffs, might be recovered under the above named agreement in this action, and defendant excepted.

4. The court further charged, that if the defendant bid off the land at the first sale, and refused to comply with the terms of the sale, the administrators had the right to re-sell the property at his risk, and to recover from him the difference between the amount of the two sales, and that the difference was the true measure of damage without regard to the real value of the property independently of the two sales. To this charge defendant excepted.

The jury found for the plaintiffs $1,080 00. The defendant moved for a new trial because the verdict was contrary to evidence, contrary to law, and on the grounds of exception above stated. The motion was overruled and defendant excepted.

HILLYER & BROTHER, for plaintiff in error.

L. E. BLECKLEY, for defendants.

McCAY, Judge.

1. Such a mistake as is set up in this case does not, on its face, seem a very reasonable one, and even if it be in its nature one that the law can correct, it would require a very high degree of proof to bring it within the rule laid down by the Code, "that the power to correct mistakes must be exercised with caution, and to justify it the evidence must be clear, unequivocal and decisive." This mistake depends for

its evidence upon the operations of the defendant's own mind. There is no way of meeting it but by the circumstances going to show its improbability. Indeed, we are inclined to think that, in sales of this kind, such a mistake as this cannot be depended on, even if clearly made out. The administrator has acted on it, given up the preceding bid, and it is impossible to put the parties right. Suppose this mistake be relieved against—how do the parties stand? Somebody had bid nearly to the amount of defendant's bid. The administrator, as was his duty and right, notices and accepts the bid of the defendant. To do this, he is compelled to reject the previous bid, and thus the sale is lost altogether. We think to permit this defense would be a wrong on this estate, without any fault upon the part of the administrator. The estate stands as to this in as good an equitable light as an innocent purchaser: Code, section 3119, and almost literally within the last clause of section 3753, as to equitable estoppels.

2. We have examined the cases decided by this court on this statute, as well as carefully considered the statute itself: act of 1831, Prince Digest, 471. The act, in terms, declares that the purchaser shall be liable "for the amount of such purchase money," and gives to the officer selling the option either to sue for that "amount" or to resell and proceed against the bidder for the "deficiency arising from such resale." It is the plain intent of the statute to protect the beneficiaries of the sale to the *full amount* of the bid, to provide that no harm shall come to them from this repudiation of the contract by the bidder. And this is based on the idea that the "bid" is the measure of the value. In most cases, the last bid is but little in excess of the former, and it is obviously a wrong to the seller that he is by the last bid compelled to give up the former. The clear purpose of the statute is to provide that either by a suit for the "amount" which would include interest according to the terms of sale, or by a re-sale, on suit for the deficiency, the seller may be kept whole and the bidder kept to his bid—to put the seller as whole as if the bidder had fully complied.

3. Under this view of the subject there is no error in the charge, and the verdict might have been for a larger sum than it was, as even this verdict does not fully meet the measure of the bid, under the terms of the sale, and put the administrator in the position he would have been had the bidder complied with his bid.

Judgment affirmed.