### KEITH *v.* BREWSTER, for use, etc.

1. While equity will, on seasonable application and under proper circumstances, relieve a party from the injurious consequences of an act done under a mistake of fact, it will not do so if such party could by reasonable diligence have ascertained the truth as to the matter concerning which the mistake was made.

2. In the absence of misrepresentation or fraud, ignorance of a fact known to the opposite party will not justify the interposition of equity, unless there be some reason why the injured party should have relied on the former for information, and, so relying, was deceived either by conduct or words.

3. When it appears that a plaintiff who held title to several distinct lots of land as security for a debt, having obtained judgment by proper proceeding, caused all of said lots to be levied on, and by mistake one of such lots was neither advertised to be sold nor sold, and the plaintiff became the purchaser at the sale of those lots which were sold, bidding the amount of his judgment, equity will not set aside such sale on the application of the purchaser on the ground of a mistake of fact, in that he thought all the lots so levied on were included in the advertisement and sale. Whether they were or not could have been readily ascertained by reasonable diligence.

4. The evidence in the present case did not warrant the charge complained of on the subject of fraud, and was not sufficient to support a verdict setting aside the sale.

Argued October 9,—Decided November 9, 1901.

Equitable petition. Before Judge Gober. Forsyth superior court. February 19, 1901.

*H. H. Perry*, for plaintiff in error. *G. L. Bell*, contra.

LITTLE, J. Brewster, the defendant in error, filed an equitable petition against Keith, the plaintiff in error, and Tinsley, a former sheriff of the county of Forsyth. He alleged in his petition that he sued for the use of the New England Mortgage Security Company, a duly incorporated body. The prayers of the petition, under the allegations made therein, were that a certain deed made by Tinsley, the then sheriff, to petitioner, dated October 3, 1892, and duly recorded, be reformed so as to include, in the description of the land conveyed thereby, thirty-four acres of lot No. 1410 in a named district of Forsyth county, and to expunge seven acres of another lot of land contained in the deed as made. He asked that the sale of the land referred to in the deed be set aside and declared null and void, that it be canceled, and that the land mentioned in that deed, together with the thirty-four acres above mentioned, be readvertised and sold in pursuance of the judgment and execution under which the land described was sold, in the event that such reformation could not be had. Petitioner also asked that Keith be enjoined from selling or disposing of the thirty-four acres of lot No. 1410 until a final hearing could be had under the petition. The evidence had on the trial made substantially the following case: Keith conveyed title to the land described, to Flint, as security for a loan of $600. Flint transferred the note and conveyed the title given him as security to the mortgage company. That company obtained a judgment against Keith, and filed a deed conveying the land to him for the purpose of having it levied on and sold to satisfy the judgment. The execution was levied on the lands described in the deed, as separate lots, including the thirty-four acres. The advertisement of the sale describes all the lands levied on, except the thirty-four acres. At the sale the land advertised was bid off by Brewster at an amount sufficient to cover the amount of the judgment, and he received a conveyance of the land so sold. Brewster then, by quit-

12

claim deed, conveyed the land to the mortgage company. The attorney for the mortgage company testified that he sued the claim to judgment, and directed a levy which was shown to have been made on all the lands embraced in the original deed from Keith to Flint; that the levy was stopped by an affidavit of illegality; that the land was subsequently readvertised by the sheriff; that he had removed from the county before the sale, and did not know of the mistake in the advertisement, but believed that it followed the levy. When the sheriff made the deed it was forwarded to the mortgage company and the tenant of that company was put in possession of the land advertised and sold. Subsequently it was found that the deed did not cover the thirty-four acres above mentioned. It was in evidence from another witness, that on the day of the sale, which was made in 1893, Keith went to the clerk's office and examined the security deed, and ascertained by a calculation the amount required to cover the debt; and witness understood that it was his purpose to raise the money and pay off the debt. Keith did not put witness on notice of the defect in the advertisement. This witness had been requested by the attorney of the mortgage company to see that an amount sufficient to cover the debt was bid for the land at the sale, and it was the belief of the witness that the whole property levied on was being sold. Witness procured the services of another to bid on the property. At the sale one Roland bid on the land. The illegality referred to, which had been previously interposed by Keith, was on the ground that the security deed was void because it was infected with usury. Brewster, the plaintiff, who was president of the mortgage company, testified that he did not know that there was a mistake in the advertisement of the land, and never discovered it until the reception of the deed from the sheriff, which deed bore date October 17, 1893. This was sent to him at Boston, where he resides, by his attorney. The deed was returned, and the attention of the attorney called to the omission. The land was bid in by his (Brewster's) direction, and he would have not so directed had he known of the omission. The company expected to make its money out of the land it had as security. On receiving the deed, in December, 1893, petitioner conveyed the title to the company. The company had actually received, as rent for the land conveyed, $46 in 1894, $25.50 in 1895, and nothing since. All of the land originally conveyed by

Keith was barely security for the loan, and, without the thirty-four acres, was not at all a sufficient security.    It appears from an inspection of the execution that, following the levy named on the execution, which levy included the thirty-four acres, there was an entry to the effect that the above levy "was this day sold" to petitioner for $850, leaving net $821.13 to be applied to the fi. fa.; but it was conceded that the thirty-four acres of land, while levied on, had been neither advertised nor sold.

The trial resulted in a verdict that the deed referred to be set aside and that the levy be readvertised and sold, and a decree was had in accordance therewith.    Keith made a motion for a new trial, which was overruled, and he excepted.    It is complained in the motion that the verdict was contrary to law and without evidence to support it; and that the court erred in charging as follows:    "Fraud may be actual or constructive.    Actual fraud consists in any kind of artifice by which another is deceived.    Constructive fraud consists in any act of omission or commission contrary to legal or equitable usage, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another.    The former implies moral guilt; the latter may be consistent with innocence."    The exception made to this charge is that there was no evidence to warrant it.    The charge is good law, but, so far as this record shows, there was nothing in the evidence which called for a charge in relation to fraud.    The part of the evidence upon which petitioner must rely to support fraud must rest in the proved conduct of Keith as to the concealment of his knowledge that the thirty-four acres of lot No. 1410 were not included in the advertisement of the land sold.    He can not be guilty of fraud in this regard, unless he was under some legal or moral duty to disclose to the petitioner or his agent the fact that this particular tract of land was not embraced in the advertisement.    In other words, as stated by the judge in the charge complained of, fraud consists in any act of omission or commission contrary to legal and equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another. Now, what is there in the evidence which shows any act committed by Keith which was contrary to his legal or equitable duty, or to the trust or confidence which petitioner reposed in him?    He knew, as he admitted in his answer, that the particular tract of

land, although levied on, was not embraced in the advertisement. But certainly the purchaser at that sale did not rely on Keith to tell him what land was advertised or what land was about to be sold.   The advertisement by the sheriff under the compulsory process against Keith designated the one, and the sheriff's act demonstrated the other.   Nor can it be said that Keith committed any act which was contrary to his legal or equitable duty.   The act shown was that he filed an illegality to the first levy.   This may or may not have been done in good faith.   The evidence is silent as to that.   But the act of interposing an illegality and arresting the execution does not, as it seems to us, in any way show or tend to show that Keith was guilty of fraud in concealing the fact that the advertisement did not describe all the land levied on.   While it is alleged in the petition that at the sale Keith bid or caused to be offered, for the land which was sold, an amount of money approximating his debt, that allegation is not borne out by the evidence, which discloses that one Roland bid for the land in competition with petitioner; and it does not appear that Roland was the agent of Keith.   But suppose that he had been, and that the land had been sold to him, he would have had to pay the amount bid for the land which was being sold, or the sheriff would have resold it at his risk.   However this may be, there is nothing in these acts sufficient to charge him with either a legal or a moral fraud.   We, of course, deal with this case under the facts as they appear in the record; and we think that under the evidence the charge complained of was unauthorized.   Again, we are of opinion that the verdict rendered was not supported by any evidence found in the record.   It may be remarked that the particular land conveyed to the mortgage company as described in the security deed was described as separate lots and parcels of land, and not as an aggregation of lots of land; that the levy followed that description, and the process was being enforced against particular parcels of land. It was the duty, then, of the sheriff to sell so much of the property levied on as would realize to the plaintiff the amount of his debt, besides all costs.   It was not his duty, even in the enforcement of the debt against the property which by contract had been conveyed to secure it, to sell more than would pay the debt, nor was it the absolute duty of the sheriff to sell the aggregate number of lots as a whole.   They could have as well been sold sepa-

rately, the one after another, until an amount sufficient to pay the debt had been realized. This, of course, it was his duty to do only after the advertisement which the laws prescribe had been made; and while, as to an innocent purchaser, irregularities in the advertisement may not affect the sale, no question of this sort can arise here, because that particular thirty-four acres was neither advertised nor sold.

. But the petitioner, as a cause for setting aside this sale, alleges that he acted through a mistake of fact; and had he not believed that the thirty-four acres had been advertised and was being sold, he would not have become the purchaser at the sale. But whose fault was it that he did not know? The fact that he lived in Boston presents no excuse. The process which was being enforced against the land was at his instance. The advertisement spoke for itself. The sheriff's announcement at the sale indicated what the purchaser would get, and if he failed to see the one or hear the other, it must have been so because he did not look or inquire. If he trusted these matters to agents, their want of diligence was his. While the Civil Code, § 3983, declares that in all cases of a mistake of fact material to a contract, or other matter affected by it, if the party complaining applies within a reasonable time, equity will relieve, yet, as explanatory of this general principle, the next section states the rule under which equity will not relieve, thus: "If the party, by reasonable diligence, could have had knowledge of the truth, equity will not relieve; nor will the ignorance of a fact, known to the opposite party, justify an interference, if there has been no misplaced confidence, nor misrepresentation, nor other fraudulent act." It is not contended here that the land which was sold was not advertised. It is not complained that the sale was not fair and regular. It is not disputed that there was another bidder. Then, although Keith knew the fact that the thirty-four acres of land were not included in the advertisement and were not sold, under this plain provision of our law, equity, in the absence of a breach of duty on the part of Keith, would not relieve. The law prescribes that the property of a defendant shall not be sold under process without due and ample notice. This notice is accessible to all, and certainly diligence on the part of Brewster demanded that he should see that the process which issued at his instance was being properly enforced. If he did not exercise that diligence, it

could have been the fault of no one but himself. In a well-considered case, the principle of law which we are now considering, and which is universally applicable, was applied by the Court of Chancery of New Jersey (Parkhurst *v.* Cory, 11 N. J. Eq. 233), where it was held that "The fact that a party to a suit, who is entitled to the surplus money on a sale of the mortgaged premises, is so far deprived of his eyesight as not to be able to read a newspaper, and alleges that on this account he did not see the advertisement of the sale, and that in consequence of his absence from the sale the property was sold at a sacrifice, is not a ground for the court's ordering a resale of the property." In the case of *Alexander* v. *Herring*, 54 *Ga.* 200, in applying this principle this court ruled that "A purchaser of property at administrator's sale, who has failed to comply with the terms of sale, and who is sued for the 'deficiency of the proceeds of a second sale,' can not set up as a reason for his non-compliance that the property (a city lot) was sold by the front foot, and that he made a mental mistake as to what his bid would amount to." In the case of *Abbott* v. *Dermott*, 34 *Ga.* 227, it was tersely ruled that "Ignorance of fact is no cause for rescinding a contract." Chief Justice Lumpkin in the opinion declared: "And such was the doctrine of the law before the Code." In the case of *Redwine* v. *McAfee*, 101 *Ga.* 704, this court, in the application of this principle, said, through Mr. Justice Atkinson, "Courts of equity grant relief only in favor of the diligent; and this court has uniformly held that equity does not relieve from a judgment which could have been prevented but for the negligence of the complaining party," for which proposition he cites a number of the prior decisions of this court. It is not, however, necessary to multiply authorities to sustain the correctness of the fundamental rule declared in our code as above set out. Does not the petitioner by his own allegations and proof come under this rule? As we have endeavored to show, there was, under the evidence in this case, no fraud, either of the sheriff or of Keith, which caused the petitioner's mistake. That mistake was one of fact — that is, that the particular parcel of land was not advertised and sold with the other parcel. Whether it was or was not could readily have been seen and ascertained by him on an examination of the advertisement, and by the announcement at the sale. As a prospective purchaser, he could have ascertained the fact by reading the adver-

tisement or attending to the reading of it, or by the announcement of the sheriff when the property was offered for sale. His failure to do so is attributable to himself alone, and, having been negligent, he can not invoke the aid of a court of equity to counteract the effect of his own want of diligence. If his mistake occasioned loss, he has only himself to blame; and it is our opinion that the verdict was not authorized by the evidence.

*Judgment reversed. All the Justices concurring.*