232

18799, 18856.  WOMACK *v.* TIDWELL, receiver;
and *vice versa.*

DECIDED JUNE 12, 1928.

*Hendrix & Buchanan,* for Mrs. Womack.

*W. S. Northcutt,* contra.

PER CURIAM. (After stating the foregoing facts.) The receiver, plaintiff in error in the cross-bill, cites the case of *Sproull* v. *Seay, 76 Ga.* 27 (2), as authority for the proposition that "the measure of the first bidder's liability was fixed at the difference between his bid and what the property brought at the final sale." The language quoted would indeed be conclusive authority if taken alone; but a previous decision of the court on the same case, and the first headnote of the decision from which the quotation is taken, show that the above holding was based on the particular facts of the *Sproull* case; and other decisions of the Supreme Court show that an administrator can not recover the difference between the first bid and the final sale, regardless of any amount that might have been recovered from an intermediate bidder. The first headnote in the *Sproull* case, supra, states that "When this case was here at the last term *on substantially the same facts* as are now brought up, this court held that it was error to award a nonsuit; that an administrator can recover

from a bidder at his sale, who fails to comply with his bid, the difference between the amount bid and what the land *subsequently sold for;* that if the second sale be delayed at the instance of the bidder, this delay will not relieve him; and that, if the second bidder does not comply with his bid, and the property is sold a third time, *and the last sale is delayed at the instance of the first bidder,* he will still be liable for the difference between what the property brought at the last sale and the amount of his bid at the first sale." (Italics ours.) And by reference to the case in 74 *Ga.* 676, we find that the amount recoverable is the difference between the amount of the first bid "and that which the land *subsequently sold for,* when again offered," and that all the delays were "at the instance of the first bidder," and that the second bidder was only "the agent to bid for the first bidder, there being evidence that the first bidder was managing the entire transaction and importuning the administrator to wait on him to pay for the land." (Italics ours.) The fact that the first bidder was managing the entire transaction and was responsible for the delays fully justifies his being held liable for the difference between the first and last bids. There is a distinction between the expression "subsequently sold for" and the expression "brought at the final sale," but the court evidently meant the amount subsequently received for the property. In the *Sproull* case the only amount subsequently received came from the final bidder, but in the case under consideration there were intermediate bidders, or at least one, from whom a recovery could be had. Under no principle of law could the receiver recover more than he has lost. The statute (Civil Code, § 6071) provides that the administrator or other officer may "proceed against the first purchaser for the *deficiency* arising from such sale (italics ours)", and it makes no provision for recovering more than the deficiency. It also makes the same measure of liability apply to all bidders, to subsequent bidders as well as the first bidder, as it provides that "any person" who fails to comply with his bid shall be liable. If subsequent bidders were not liable on their bids, they could bid promiscuously and recklessly, with the assurance of no responsibility therefor. If a subsequent bidder is insolvent, or if it is established that a recovery from him on his bid can not be had, then the risk of the preceding bidder is to that extent increased. Numerous decisions of the Supreme Court and of this court, to the effect that

the bidder takes the "risk" when he refuses to comply with his bid and lets the property be sold again, mean that he takes the chance of the property bringing more or less than he bid, thus eliminating or increasing his liability. In the case of *Gay* v. *Parish,* 138 *Ga.* 399, 401 (75 S. E. 323), the court held that the officer had a right "to resell the property and hold the bidder liable for the difference between his bid and what the property brings at the *second sale,* if a less amount." (Italics ours.) In *Roberts* v. *Smith,* 137 *Ga.* 30 (2) (72 S. E. 410), it was held that "In case a purchaser at an administrator's sale refuses to comply with his bid, where the administrator elects to resell the land at the purchaser's *risk,* he should do so at the earliest practicable time." (Italics ours.) And in *Alexander* v. *Herring,* 54 *Ga.* 200 (2), the Supreme Court said: "The measure of damages in a suit by an administrator, against a purchaser at his sale, 'for the deficiency' in the amount of the *second sale,* is what must be added to the amount of the *second sale,* to put the administrator in the same position as if the defendant had fully complied with his bid." (Italics ours.) The record in the case under consideration shows that the plaintiff received $3650 from the final purchaser, and collected $200 from Mrs. Rudolf because of her failure to comply with her bid; and if he is allowed to collect $1200 from Mrs. Womack, the defendant, as claimed in the 9th and 10th paragraphs of the petition, he will have recovered $5050, which is more than any one ever bid on the property. The record further shows that the receiver already has an order of the court authorizing him to bring suit against Miss Stewart on her bid made subsequently to that of the defendant, and that there were still other bids between the first and last bids on the property. A recovery on each of these for the full amount of the difference between their bid and the final purchase-price would result in the property bringing an amount far in excess of any bid and far in excess of the loss sustained by the receiver by reason of their failure to comply with their bids, which would be manifestly inequitable. We think the court properly sustained the 6th paragraph of the defendant's demurrer and struck the 9th and 10th paragraphs of the petition, thus limiting the receiver's possible recovery to the difference between the first bid and the "next bid."

On the main bill of exceptions it is necessary to discuss only the general grounds of the motion for a new trial. In order for the

receiver to recover from Mrs. Womack on a bid it was of course necessary for him to show that she made such bid or authorized some one to do so for her. It is undisputed that J. L. Womack, husband of the defendant, submitted a bid in his wife's name; and it is undisputed that J. L. Womack was manager of a business owned by his wife; but the evidence shows that the bid was not made in the name of the business which the husband managed, but was made in the name of his wife individually. Furthermore, the receiver produced no evidence that this business was the purchase or sale of real estate, or that the husband as manager of the business was authorized to buy real estate, or that Mrs. Womack had authorized him to bid on this property for her, or that she had ratified his bid, or that she herself bid on the property. On the contrary, the evidence shows that the business of which the husband was manager was not engaged in buying and selling real estate, but in furnishing building material, and that it had never bought any real estate, and that Mrs. Womack did not bid on this property, or authorize her husband to bid on it for her, or ratify her husband's bid. The record shows that Mrs. Womack consistently refused to have anything to do with the transaction until she was forced into court to answer this suit. The husband's act in making the bid in his wife's name was an ultra vires act and was not binding on the defendant. The burden being on the receiver to show that the defendant made the bid, or authorized it, or ratified it, and the receiver having failed to carry this burden, the verdict and judgment against Mrs. Womack for $350 is without evidence to support it, and the court therefore erred in overruling her motion for a new trial.

*Judgment on main bill of exceptions reversed. Broyles, C. J., and Luke and Bloodworth, JJ., concur. Judgment on cross-bill affirmed. Broyles, C. J., and Luke, J., concur. Bloodworth, J., dissents.*