KURFEES *v.* DAVIS, receiver, *et al.*

No. 9746.  FEBRUARY 15, 1934.  REHEARING DENIED MARCH 3, 1934.

*Grant & Long,* for plaintiff in error.

*William J. Davis Jr., Ray Williams, Colquitt, Parker, Troutman & Arkwright, George P. Whitman, T. J. Long, Dillon, Calhoun & Dillon, Pearce Matthews,* and *Robert S. Sams,* contra.

RUSSELL, C. J. (After stating the facts.)  In its last analysis, the question before us is whether the superior court, in the circumstances of this case and for the reasons stated, had the power to divest Mrs. Kurfees of her property right in her judgment, and destroy the priority of the lien of the execution issued and recorded in her favor by virtue of that judgment.  There is no evidence that Mrs. Kurfees took any steps in furtherance of the sale, or that by

any misrepresentation or fraud on her part she contributed to the result of the sale which the petitioner sought to have set aside. If it be insisted that before the sale the security deeds were so superior to the lien of Mrs. Kurfees' judgment that the effect of the sale and the confirmation thereof would be to give Mrs. Kurfees such an advantage as would be unconscionable, it is only necessary to say, as we have already stated, that one's property right in a judgment is always subject to be, by operation of law, either enhanced or diminished in value, and if the parties in this case, without examination of the records and by their own action, placed the lien of Mrs. Kurfees' judgment in first place with regard to its binding force upon the Tremont hotel property instead of in third place, they have no ground of complaint against the plaintiff in error.

It is conceded that the only reason why the purchaser asks that the sale, which the court had confirmed at its instance, should be set aside is because it bought in ignorance of the fact that the lien of Mrs. Kurfees' judgment had not been extinguished. In other words, the purchaser found out (when it already had constructive notice of the fact that Mrs. Kurfees' judgment was alive) that it would have to pay five or six thousand dollars more for the property than it supposed it would at the time it made its bid. This, it alleged, was due to misrepresentations or mistakes on the part of the court's receiver. In these circumstances (and if the court had power to set aside the order of confirmation), it may be that the court might have reduced the amount of the purchaser's bid by deducting the amount of Mrs. Kurfees' fi. fa., in the exercise of some broad power with which a court of chancery is clothed. But the court would have had no power to set aside the order confirming the sale to the purchaser, for the express purpose, as is plainly disclosed by the petition, of affecting the status of Mrs. Kurfees' judgment resulting from the sale, if not indeed of obliterating and destroying the value of the judgment altogether.

That the receiver's sale did not divest or affect the lien of the judgment of Mrs. Kurfees, who was a stranger to the proceedings under which the receiver was appointed and the sale was ordered, is well settled. "A receiver's sale is subject to liens of those who are not parties to the receivership proceeding. A lienholder has a right of which he can not be deprived without an opportunity for a day

in court." 4 Pomeroy's Eq. Jur. (4th ed.), § 1631; *Denny* v. *Broadway National Bank*, 118 *Ga.* 221 (44 S. E. 982); *Empire Cotton-Oil Co.* v. *Park*, 147 *Ga.* 618 (95 S. E. 216). So we come to the question, do the pleadings and evidence make such a case as to authorize the court to relieve the bank from its bid? As we have already stated, the pleadings and evidence show that the purchase of the property encumbered with the lien of Mrs. Kurfees' judgment was not the result of any act on her part. Nor was it the result of fraud, or of mistake unaffected by the purchaser's own negligence. We are of the opinion that a court of equity can not relieve a purchaser at a judicial sale from his contract, if to do so would be to prejudicially affect the rights of any one; for the reason that a receiver's sale is a judicial sale, and the maxim caveat emptor applies. This our court has many times decided, and the general rule is stated in the Civil Code (1910), § 6054: "The purchaser must look for himself to the title and soundness of all property sold under judicial process. Actual fraud or misrepresentation by the officer or his agent may bind him personally. No covenant of warranty binds him individually, unless made with that intention and for a valuable consideration." It is stated in 53 C. J. 218, § 350: "It may be laid down as a general rule that he [the purchaser at a judicial sale] must take such title as an examination of the proceedings will show that he can get, and is bound to ascertain for himself *beforehand* what title he will obtain by the sale." See *Pinkston* v. *Harrell*, 106 *Ga.* 102, 104 (31 S. E. 808, 71 Am. St. R. 242), where it was said: "That a purchaser at a judicial sale is bound to comply with his bid, even though he gets no title to the property sold, is the well settled law of this State." See also *Colbert* v. *Moore*, 64 *Ga.* 502; *Jones* v. *Warnock*, 67 *Ga.* 484. Under the doctrine of caveat emptor, a purchaser at a judicial sale must keep his eyes open, and "look for himself" as to the state of the title he will obtain by the sale. The execution dockets and other records are open to him; and it is his duty, if he wishes to protect himself, to ascertain the status of the title. It was said in *Wylly* v. *Gazan*, 69 *Ga.* 506, that the principle that relief will not be granted to a purchaser who has been injured by his own negligence "applies with increased force to judicial sales, where the doctrine of caveat emptor controls. At such sales a purchaser seeking relief would be obliged to show actual fraud or mistake,

unaffected by his own negligence, of a character so gross as to amount to actual fraud." As said in the Civil Code, § 4581, "If the party, by reasonable diligence, could have had knowledge of the truth, equity will not relieve." In *Keith* v. *Brewster,* 114 *Ga.* 176 (39 S. E. 850), it was said: "While equity will, on seasonable application and under proper circumstances, relieve a party from the injurious consequence of an act done under a mistake of fact, *it will not do so if such party could by reasonable diligence have ascertained the truth as to the matter concerning which the mistake was made."* (Italics ours.) In *Stone* v. *Moore,* 75 *Ga.* 565, although the facts of the case were somewhat different from those of the case at bar, this court held: "When the consideration of a contract is for land, the purchaser contracts with his eyes open. . . Such things as the soil growth or springs on the land are open to inspection, and he is wilfully negligent if he fail to look and see for himself; it is his fault and negligence, and he can not be heard, either at law or in equity, to complain of the conduct of the other party, the effects of which could have been averted by slight diligence on his part." We are of the opinion that in such case as this, where encumbrances and judgment liens duly entered on the public records provided for that purpose are open to inspection, the purchaser is negligent if he fail to look and see for himself, and neither law nor equity will relieve him of his own want of diligence. *Roberts* v. *Smith,* 137 *Ga.* 30 (72 S. E. 410), was a case in which the purchaser at a judicial sale (administrator's sale) sought to be relieved from his bid, on the ground that "he bid on the land under a mistake of fact that a different lot was being offered for sale." This court said: "If the party by reasonable diligence could have had knowledge of the truth, equity will not relieve. . . The slightest diligence on the part of the defendant when he began to bid would have disclosed the particular tract which was being cried by the auctioneer. . . To relieve the defendant of the consequences of his bid because of his alleged mistake would be to grant him absolution, when he had not exercised the slightest degree of diligence to protect himself." In this case the savings bank, by examining the records of Fulton County, could have discovered the lien of the plaintiff in error and protected itself. It did not do this, but bid in the property and consented to the confirmation of the sale, without exercising any diligence what-

ever. We may say again, as was said in the *Roberts* case, supra, that
to relieve the bank of its bid would be to grant it absolution when
it had not exercised the slightest degree of diligence to protect itself.

Since to set aside the receiver's sale in the case at bar would af-
fect prejudicially the rights of Mrs. Kurfees, a third party (the
negligence of the purchaser having caused her judgment to become
the first lien against the property), the decision of this court in
*Southern Cotton Mills* v. *Ragan*, 138 *Ga.* 504 (75 S. E. 614), is
controlling in this case. In the *Ragan* case this court laid down
two essential elements which must affirmatively appear before a
court of equity will be authorized to relieve a purchaser from his
bid because of mistake of fact: the exercise of ordinary diligence
in discovering the truth, and the fact that the relief will not prej-
udicially affect the rights of any one. As we have endeavored to
show, the confirmation of the sale made Mrs. Kurfees' judgment the
first lien on the property. If the sale, lawfully conducted as it was
under order of the court, could be set aside, the lien of Mrs. Kur-
fees' judgment would be inferior to the prior lien of the reinstated
security deeds after they were resurrected by the decree. There is
no force in the argument that Mrs. Kurfees had no rights which
were affected by the granting of the prayer to set aside the sale, for
the reason that before the sale her judgment was inferior to the
liens of the first and second deeds, and that her judgment would
occupy the same position relatively to the deeds, if the sale were
set aside, that it occupied before. This for the reason that the
sale and its confirmation gave to her judgment against Thrower a
new status, and she has the right to the enhancement of the value of
her property right which the grant of the relief prayed for would
destroy. Obviously it is no answer to this proposition to say that
she paid nothing to secure these rights, but acquired them merely
by operation of law. A right obtained by operation of law is just
as sacred, and entitled to as much protection, as any other right. It
is not for the court, in the circumstances of this case, to inquire
how a party acquired the right he asserts, but merely to determine
whether the right in fact existed. So far as the rights of Mrs. Kur-
fees are involved, the court could only properly deal with them as
they existed at the time this petition was presented, not as her rights
might have been if the sale had never occurred. A court of equity
will not take from a party a vested legal right merely because it

was acquired by operation of law and not by purchase. So we are of the opinion that the court was without power to grant the relief prayed for; because to have set aside the prior judgment of the court would have prejudicially affected the rights of the plaintiff in error. It is true that as a general rule a court of equity may permit its receiver to resell the property where the purchaser refuses to comply with his bid. But this rule is based on the exercise of a sound discretion on the part of the chancellor. He is not authorized to exercise this right when the purchaser can be forced to comply with his bid, and where, as in the case at bar, to relieve the bank from its bid will prejudicially affect the rights of another. The only reason why the savings bank asserts it should be relieved from its bid is that in purchasing the property it overlooked the lien of plaintiff in error's judgment. No such question arose as that the bank is not in a position to comply with its bid. Under the terms of the sale the bank was not required to pay the amount of its bid in cash, but was authorized to pay the bid by canceling certain notes or bonds which it held, and by paying the receiver only an amount necessary to cover court costs, expenses of the sale, and the receiver's fee of $250. We are of the opinion that the court erred in not directing and requiring the vendee to comply with its contract. As said in *Smith* v. *Roberts,* supra: "It is a general proposition, well recognized in equity pleading and practice, that one who submits a bid for property offered for sale by a receiver under order of court brings himself within the jurisdiction of the court for the purpose of having the sale completed; and to this end the court may by rule or attachment compel the bidder to perform his part of the contract. . . The summary process exercised by courts of equity to compel a purchaser to complete his bid is cumulative of the remedy to recover the amount in an action at law, not exclusive." See also 53 C. J. 219. The court erred in setting aside the receiver's sale, and in ordering a resale of the property.

*Judgment reversed. All the Justices concur, except Gilbert, J., disqualified.*