### 353. TRAYLOR, SPENCER & CO. v. BRIMBERY.

1. Time is of the essence of a contract, when the nature of the contract is such as to indicate that this must have been the intention of the parties. In order for a proposition to be binding upon him who makes the proposal, the opposite party must accept it before the time fixed for the performance of the contract.

2. In a case where B. agreed in writing to pay to the creditors of C., in the event that they "may hereafter accept my offer of settlement, . . . 50 per cent. of principal in full settlement of said claims, paying 25 per cent. February 1, and 25 per cent. April 1, 1899," and D., one of the creditors, accepted the proposition on May 16, 1899, B. was not bound thereby to pay the said 50 per cent., for the reason that an acceptance after the date proposed for payment is not acceptance within a reasonable time.

3. The evidence disclosing the above state of facts, in an action brought to recover the 50 per cent. proposed to be paid, it was not error to award a nonsuit.

Complaint, from Mitchell superior court—Judge Spence. November 29, 1906.

Argued May 14,—Decided May 24, 1907.

*I. A. Bush & Son, W. R. Hammond*, for plaintiffs.

*Sam S. Bennet*, for defendant.

RUSSELL, J.   Traylor, Spencer & Co. brought suit in a justice's court against M. F. Brimbery.   Attached to the summons was the following account: "Winston, N. C., July 15, 1899.   M. F. Brimbery, in account with Traylor, Spencer & Company.   Terms: 1/2 Feb. 1st; 1/2 April 1st, 1899.   July 15.   To cash acct. settlement and transfer acct. vs. A. B. Brimbery, at 50%, $65.37."   The case was appealed to the superior court, and upon introduction of the plaintiff's evidence a nonsuit was awarded.

The plaintiff introduced the following writing: "Camilla, Ga., Dec. 23, 1898.   In consideration that the stock of goods, notes, accounts, and other property belonging to A. B. Brimbery is hereby placed in my hands for disposition, I hereby agree to pay to I. A. Bush & Sons, attorneys at law, for such of creditors of A. B. Brimbery as have not already accepted my offer of 50% in full settlement of claims, their pro rata share of the proceeds of said stock of goods, notes, and accounts, etc., as soon as the same can be reduced to cash by me.   In the event that said creditors may hereafter accept my offer of settlement, as made to I. A. Bush & Sons, attorneys aforesaid, I agree to pay them 50% of principal in full settlement of said claim, paying 25% February 1, and 25% April 1, 1899.   Claims as follows: French, Morris & Co., $100.95; Loomis & Hart Mfg. Co., $49.10; Atlanta Wooden Ware Co., $43.45; Traylor, Spencer & Co., $127.00; Cumberland Paper Co., $57.15; Ware Fur. Mfg. Co., $72.00; Wilber Seed Co., $32.00; John C. Vogler, $38.25; W. H. Marks & Co., $23.50 (paid); Waxelbaum Pepper Co., $49.00. [Signed] M. F. Brimbery."

I. A. Bush testified for the plaintiffs that I. A. Bush & Sons were attorneys for the plaintiffs when the agreement was signed by M. F. Brimbery.   A. B. Brimbery, a son of defendant, failed in business and turned over to I. A. Bush his stock of merchandise and other property for the benefit of his creditors.   M. F. Brimbery claimed to be one of A. B. Brimbery's largest creditors.   The said M. F. made the proposition set out in the agreement, and by consent of A. B. Brimbery, I. A. Bush & Sons turned all the property of A. B. Brimbery over to M. F. Brimbery.   Soon after this M. F. Brimbery sold the stock of goods for $2,000 or $2,200.   Witness was not able to state the amount realized out of the other property.   He further testified that Marshall E. Bush, a witness,

on the former trial of the case, was dead; that the said deceased witness testified, on the former trial, that as soon as he was authorized by plaintiffs in this case he notified said Brimbery that he would accept his proposition of 50 per cent. in the dollar as full settlement. I. A. Bush further testified that he knew that M. F. Brimbery was notified by M. E. Bush, because he talked to him about it several times. The notice of acceptance was given M. F. Brimbery after the dates named in the agreement and after the date of the letter hereafter in evidence.

The plaintiffs introduced in evidence the following letter: "Danville, Va., May 16, 1899. Messrs. I. A. Bush & Sons, Camilla Georgia. Dear Sirs:—In reply to your favor concerning A. B. Brimbery's account, would say that you may accept 40 per cent. net to us in full settlement of the account. We trust that you will close the matter at once. Traylor, Spencer & Company." I. A. Bush then testified: "This letter from Traylor, Spencer & Co. to I. A. Bush & Sons came by due course of mail from the post-office address of plaintiffs."

Omitting the objections to the magistrate's summons and to the peculiar wording of the account thereto attached, and that the contract proposed by Brimbery may well be construed as a contract between the defendant and I. A. Bush & Sons, attorneys at law, for all such creditors of A. B. Brimbery as have not already accepted the offer at 50 per cent., and not a contract for the plaintiffs individually, and remembering that niceties of pleading are not required in justice's courts (*Southern Railway Co.* v. *Oliver*, 1 *Ga. App.* 736, 58 S. E. 244), we come to the controlling point in the case. We have no difficulty in construing the suit as one for $65.-37 in cash, which would have been the amount due if the plaintiffs had accepted the proposition. If the plaintiffs had accepted the defendant's proposal, he would have owed them 25 per cent. of their claim on February 1st, and 25 per cent. on April 1st, and this debt was to be discharged in cash. He had been intrusted with the stock of goods, and if this proposition was accepted the debt did not arise altogether from the contract; but the contract was also evidence of the amount he was to pay. Assuming, then, that the statement of account is sufficient for the purposes of a justice's court, and that suit was brought (as is apparent) to recover under the 50 per cent. proposition, and not the pro rata, was the evi-

dence so insufficient to sustain the allegations that a nonsuit ought to have been awarded?

We think that the case. was properly nonsuited. Admitting that the evidence harmonized with the summons and that the suit was brought to recover the 50 per cent. offered, the suit must fail for the reason that the evidence shows that the offer or proposal to pay 50 per cent. was not accepted until long after the time for the performance of the contract had passed. The proposal can not be construed to be held out indefinitely, in view of the times fixed for the payments in case of acceptance; and the offer would have had to be accepted in a reasonable time. To a proposal made December 23d, 1898, payments under which were to begin February 1st following, an acceptance made several months thereafter (during May, 1899) would not be an acceptance within a reasonable time. It is evident, from the terms of the writing signed by Brimbery, that he proposed to pay the creditors either their pro rata share of the proceeds of the stock of goods, notes, accounts, etc., or 50 per cent. of the amount of the claim of each creditor, at his option. If he honestly administered the trust reposed in him, the creditor would receive his pro rata share, which might be more or less than 50 per cent. of his account. There was no risk in this to Brimbery. The risk was on the creditor. If the creditor accepted the 50 per cent., it devolved the risk upon Brimbery, and there was no risk on the creditor, though his pro rata share from the stock of goods might not have amounted to 10 per cent. of his claim. From the very nature of the transaction time was of the essence of the proposal to contract, and of the contract, if one had been made by acceptance on the part of the creditor.

If the creditor had accepted the 50 per cent. proposal before February 1, 1899, Brimbery would have been bound to pay the amounts contracted to be paid, regardless of what the stock brought and whether he had sold the stock or not. He would have been compelled to pay, if able to respond, even if the stock had been destroyed by fire. In other words, he took all the chances. The plaintiffs really had three options. They could allow Brimbery to sell and collect for the stock, notes, accounts, etc., and take their pro rata in a division with all the creditors. They could have accepted the 50 per cent. or could have disregarded Brimbery's proposal altogether, sued the debtor, A. B. Brimbery, or his legal rep-

resentative, and garnished M. F. Brimbery, obtained a judgment for the full amount justly due, and perhaps, by garnishment, have collected the entire claim. By failing to accept either of Brimbery's proposals, they are remitted to the latter course of action.                    *Judgment affirmed.*