16084, 16085.  HOME INSURANCE COMPANY *v.* SWANN;
and *vice versa.*

1. In a suit by a fire insurance company on a premium note payable to it, a plea of nudum pactum, alleging in substance that while the defendant applied to the plaintiff for a policy of insurance, accompanying his application with the note sued on to cover the premium, yet no policy of insurance was ever delivered or tendered to him by or for the plaintiff, and that the note was therefore without any consideration to support it, is good as against a general demurrer.

(*a*) A demurrer attacking a plea only "as being insufficient in law" is a general demurrer, and brings into question only the substance of the plea.

(*b*) An allegation that there has been no delivery of a thing is equivalent to an allegation that there has been no legal delivery of it, either actual or constructive.

2. An application by a property owner to a fire-insurance company for a policy of insurance must be accepted within a reasonable time, or else it may be treated by the applicant as having been rejected.

(*a*) While the period constituting such a reasonable time may, as a general rule, be a matter for determination by the jury under all the evidence, yet where, as in this case, the company appears to have remained silent for approximately six months after receipt of the application, the presumption that it was rejected becomes conclusive.

3. Where a policy of insurance is delivered and a premium note taken, payable in installments, and stipulating that "in case any one of the installments herein named shall not be paid at maturity, . . this policy shall lapse until payment is made," letters from the company to the insured, calling his attention to a past-due installment and advising him that the policy stands suspended during the period of delinquency, and that it can be reinstated only through the payment of the overdue installment, will be construed as the company's interpretation of the legal effect of the stipulation in the note, and not as a declaration of an intention on its part to declare the contract of insurance rescinded.

(*a*) That part of the plea which sets up no defense other than that the plaintiff had rescinded the contract of insurance by writing such letters should have been stricken on general demurrer.

DECIDED MAY 14, 1924.

Complaint; from city court of Blakely—Judge Gray. November 19, 1924.

*Lowrey Stone,* for plaintiff.

*Glessner & Collins,* for defendant.

LUKE, J. The Home Insurance Company of New York sued J. W. Swann on a promissory note. Swann admitted a prima facie case in the plaintiff and claimed the right to open and conclude the argument on the several affirmative defenses set up by him.

The plaintiff demurred generally to each of the alleged defenses. The demurrer was sustained in part, and in part overruled. Upon the return of a verdict for the defendant, the plaintiff excepted directly, and the defendant sued out a cross-bill of exceptions, both complaining of the ruling on the demurrer. The case is brought here without any motion for a new trial, under the provisions of the Civil Code, § 6144, the plaintiff assigning error on the verdict as having necessarily been controlled by the prior ruling on the demurrer. The note sued on was as follows: "The company is authorized to insert in this note the number and date of the policy. 273.88. For value received, in policy No. F. I. 514465 B. 484189 dated May 19th, 1922, issued by The Home Insurance Company, New York, I promise to pay to said company, or order (by mail, if requested), at the office of its Western Farm Department, in Chicago, Illinois, with expenses of collection and attorney's fees, two hundred seventy-three dollars and eighty-eight cents, payable in installments as follows: Sixty-eight dollars and forty-seven cents upon the 1st day of June, 1923; sixty-eight dollars and forty-seven cents upon the 1st day of June, 1924; sixty-eight dollars and forty-seven cents upon the 1st day of June, 1925; and sixty-eight dollars and forty-seven cents upon the 1st day of June, 1926, without interest. And it is hereby agreed that in case any one of the installments herein named shall not be paid at maturity, or if any single-payment promissory note (acknowledged as cash or otherwise) given for the whole or any portion of the premium for said policy shall not be paid promptly when due, this company shall not be liable for loss during such default, and the policy shall lapse until payment is made to this company at the Western Farm Department at Chicago, and the whole amount of installments or notes remaining unpaid on said policy may be declared earned, due and payable, and may be collected by law. In settlement of any loss under above policy, this company may deduct therefrom the entire amount of unmatured installments of this note. This note is given in payment for said policy of insurance. (Signed) J. W. Swann." For the present purposes, the plea is divided into three parts, and as follows:

### First.

"On or about the 19th day of May, 1922, J. B. Tarver, of Blakely, Georgia, called at the residence of this defendant, which

is located on the Blakely and Quincy public road, four miles south of that city, represented to defendant that he (Tarver) was the duly authorized agent and representative of the Home Insurance Company of New York and asked defendant to sign an application, addressed to that company, for a policy of insurance covering his dwelling house to the amount of $2,000, his household and kitchen furniture to the amount of $1,000, and his barn to the amount of $500; said dwelling, barn, and furniture being that which was then situate on the aforesaid premises occupied by this defendant as a country residence. Defendant thereupon signed said application at the earnest solicitation of the said Tarver, who also insisted that defendant should then and there sign the promissory note sued on in this case, which defendant did upon the express understanding and agreement with the said Tarver, as the agent of the plaintiff, that said note should be forthwith returned by him to this defendant in the event said company did not accept said application for insurance and issue and deliver to defendant a policy of insurance covering said property in the respective amounts aforesaid. No such policy has at any time since ever been delivered to or tendered to this defendant by anyone. About three weeks later the said Tarver again visited defendant's premises, accompanied by a man whose name was Cook and whom the said Tarver represented to be an insurance inspector in the service of the plaintiff company, and who came to inspect the property on which defendant had applied for insurance. Defendant never heard anything further with reference to his said application for insurance until late in the fall of 1922, when he received notice from the First National Bank of Blakely that it held said note for collection. He thereupon called on the said Tarver for an explanation as to how matters stood, and was assured by him that the policy had been issued by the company and was then in his (Tarver's) safe, but he would have 'to fix it up' before delivering it to defendant, and would do so the next morning (or have his young lady clerk attend to the matter), and then mail the policy to defendant. Nevertheless, this defendant has never at any time since received any such policy, by mail or otherwise, nor has any policy of insurance ever been tendered to him by the said Tarver or by any one else, and this defendant has derived no benefit or protection from the plaintiff company in the way of any insurance on

his property, or any other thing of value, as a consideration of the note declared on by the plaintiff. Wherefore this defendant specially pleads a total want of consideration for said note, in that there was no consideration for his giving it in the first instance, said company in no way binding itself to grant his said application for insurance; and defendant further expressly pleads a total failure of consideration, in that *no policy of insurance was ever surrendered to him by said company in consideration of the making of said note payable to its order,* as contemplated by himself and its said agent when said note was executed, and because, under the law of this State, all contracts of insurance must be in writing, signed by the parties thereby bound as insurers, and *the plaintiff company has never entered into any such contract with this defendant, in consideration of the execution of his note declared on,* given under the circumstances hereinbefore fully set forth in detail."

### Second.

"Under the law of the land, the plaintiff was bound, within a reasonable time after its aforesaid receipt of defendant's written application for insurance, to either accept or reject the same, and (if accepted) to deliver or tender to defendant the policy for which he applied, which plaintiff has never done. Such a reasonable time expired, as matter of law, by the first day of January, 1923, since which date this defendant has consistently adhered to an election on his part to treat his aforesaid negotiations with the plaintiff for insurance as at an end; and he has never paid any insurance premium or otherwise recognized any liability to pay the note sued on."

### Third.

"Furthermore, as early as September 20, 1923, the plaintiff company itself elected to treat the contract evidenced by said note as rescinded. On that date it addressed to defendant a written communication in which it called attention to his failure to pay an installment of $59.01 which it claimed became due, under the terms of said premium note, on June 1, 1923, and in which it gave defendant notice of its said election as follows: 'You understand, of course, that during the period of delinquency the policies stand suspended, and that their reinstatement can be effected only through the payment of the overdue installment.' Again, on

October 8, 1923, the plaintiff, in writing, gave notice to defendant of its said election in the following unequivocal language, to wit: 'We have had no reply to our several letters in regard to the installment of your premium due June 1, 1923, on your policies F. I. 514465 & B. 484189. Your attention was called to the suspended condition of these policies, *which leave you without insurance protection,* and they *must remain so,* unless remittance of the required amount, $59.01, is received at this office.' And, defendant avers, the plaintiff is bound by its said initial election, and has no right at this date to recede therefrom or to treat said premium note as any longer binding on this defendant, or to sue or recover thereon, but is in duty bound, both morally and legally, to forthwith return said note into the custody of this defendant, for each and all of the reasons hereinbefore assigned, under oath. Wherefore, this defendant prays that he be hence discharged, together with his reasonable costs."

1. There was no special demurrer specifically pointing out any of the defects apparent upon the face of the foregoing pleas, but the plaintiff demurred to each plea only "as being insufficient in law." Such a demurrer brings into question only the substance of the plea. *Hicks* v. *Hamilton,* 3 *Ga. App.* 112, 117 (59 S. E. 331), and citations; *De Laigle* v. *Shuptrine,* 21 *Ga. App.* 697 (94 S. E. 904). The first and second pleas set out above were stricken on general demurrer, but as to the third plea the demurrer was overruled.

Stripped of many words, the first plea alleges, in substance, that the defendant executed the note to cover the premium on a policy of insurance applied for, and that the note and the application were delivered to the plaintiff together, in order that the plaintiff might accept or reject both, but that the plaintiff retained the note and at the same time failed to issue and deliver the policy of insurance which was to constitute the sole consideration therefor, and which the note itself recites was the sole consideration therefor. If that part of the plea is true (and for the purposes of the general demurrer it must be accepted as true), then the note sued on is a mere nudum pactum. Civil Code (1910), § 4241; *Seawright* v. *Dickson,* 16 *Ga. App.* 436 (1) (85 S. E. 625); *Jones* v. *Georgia Fertilizer & Mfg. Co.,* 21 *Ga. App.* 170 (94 S. E. 81).

The plaintiff, however, contends that the defendant's plea shows a constructive delivery of the policy, relying upon that part of the first plea wherein it is alleged that, several months after the execution of the note and application, the defendant called upon the plaintiff's supposed agent, Tarver, for an explanation, and was assured by him that the policy had been issued by the company and was then in his (Tarver's) safe, but he would have to "fix it up" before delivering it to the defendant. Whether the policy, if any was ever in fact issued, required or dispensed with actual delivery to the insured is a matter as to which the record is wholly silent; but conceding that constructive delivery was sufficient, still delivery by the company to its own agent, with instructions "to fix it up" and then deliver it to the insured, would be no delivery to the insured, nor would a completed policy so delivered be delivery to the insured, in the absence of any fact tending to show the authority of the insurer's agent to receive the policy for or in behalf of the insured. *Reserve Loan Life Insurance Co.* v. *Phillips,* 156 *Ga.* 372 (119 S. E. 315). Certainly there is nothing in the plea tending to show that Tarver was the dual agent of the plaintiff and the defendant. Furthermore, in other parts of the plea it is distinctly alleged that "no such policy has at any time since ever been delivered to or tendered to this defendant by any one," and that "this defendant has derived no benefit or protection from the plaintiff company in the way of any insurance on his property, or any other thing of value, as a consideration of the note declared on by the plaintiff." The allegation that there has been "no delivery" is broad enough to include every kind of delivery that might be legally sufficient for the particular case, whether actual or constructive. The evidence upon the trial may develop questions of law touching delivery and non-delivery, or actual and constructive delivery, but the pleadings do not. In the present state of the record, the first plea presents only questions of fact, substantial issues which must be submitted to and determined by a jury under appropriate instructions.

2. The second plea, in connection with the averments of the first, also raises a substantial issue which should have been submitted to the jury. An offer and an acceptance are essential prerequisites to the creation of every kind of contract. *Huggins* v. *Southeastern Lime & Cement Co.,* 121 *Ga.* 311 (3). "Until as-

sented to, each party may withdraw his bid or proposition, unless a given time is agreed on in which the other party may assent." Civil Code (1910), § 4230. Whether the plaintiff was given any time limit in which to accept or reject the application does not now show, nor is there any presumption of law that it was given, nor is there any special demurrer calling for more specific information upon the point. In the absence of such a given time, the company must have accepted the defendant's offer within a reasonable time, or else it will be held to have rejected it. "If no time is prescribed for accepting an offer, it must be done within a reasonable time." *Prior* v. *Hilton & Dodge Lumber Co.,* 141 *Ga.* 117 (80 S. E. 559). What constitutes a reasonable time in any given case must depend upon its own peculiar facts. It is generally a question for the jury, but in any case of unusual delay it may become a question of law, rather than of fact. "Time is of the essence of a contract, when the nature of the contract is such as to indicate that this must have been the intention of the parties. In order for a proposition to be binding upon him who makes the proposal, the opposite party must accept it before the time fixed for the performance of the contract." *Traylor* v. *Brimbery,* 2 *Ga. App.* 84 (1) (58 S. E. 371). From the very nature of a contract of fire insurance, prompt action would seem to be required in all such cases, in the absence of any stipulation postponing the date the contract is to become operative or fixing the time when the application might be accepted or rejected. In the instant case the defendant alleges (and plaintiff's general demurrer admits, for purposes of a ruling thereon) that the plaintiff received the application on May 19, 1922, and took no affirmative action thereon prior to January 1, 1923, or for a period of more than six months. The plea further alleges (and the demurrer challenges) that the reasonable time allowed by law in which to accept or reject such an application "expired, as matter of law, by the first day of January." Owing to the nature of the contract, and in the absence of any reason or excuse for such delay, we are of the opinion that the defendant's position is well taken, and that the judgment sustaining the plaintiff's general demurrer to the second part of the defendant's plea was erroneous.

3. The third plea of the defendant, as to which the plaintiff's general demurrer was overruled, appears to be wholly without

merit. "In some cases a party may rescind without the consent of the opposite party, for non-performance by him of his covenants." Civil Code (1910), § 4306. "When a breach is thus occasioned, the other party has a right to rescind the contract, on notification and return of what he has received, or he may at his pleasure abide by the contract and have a right of action to recover damages for the breach; but he can not do both. If, after such breach, he not only retains the articles received, but puts them to his own use, this is equivalent to an election to abide by the terms of the original contract, and he thereafter holds under those terms the articles actually received." *Collins* v. *Frazier,* 23 *Ga. App.* 236 (1) (98 S. E. 188). In view of the express provisions of the note sued on, touching the effect upon the contract of insurance of default in the payment of any installment of the note, it is manifest that the company's intention in writing the letters referred to in the third division of defendant's plea was not to notify Swann of its election to rescind the contract of insurance, but to call his attention to the express provisions of the note which he had executed.

Of course, there must be a contract before there can be any rescission of contract; and if the defendant should, upon the next trial, establish the defense set out in his first or second plea, or both of them, there would be no contract, and consequently no room for a rescission of contract. But a defendant is permitted to file contradictory pleas, so as to avail himself of all the probable evidence, just as a plaintiff may file a petition with plural counts, each contradictory of the other. Civil Code (1910), § 5649; *Miller* v. *Southern Railway Co.,* 21 *Ga. App.* 367 (5 *a*) (94 S. E. 619). Here, however, the defendant's third plea contains matter which is in no sense germane to either of his other defenses, and which is urged by him as a separate and distinct defense, and which, if sound in law, would defeat a recovery by the plaintiff even though the plaintiff should upon the trial prove a sufficiently prompt and legal issuance and delivery of the policy of insurance applied for. It is urged solely as a good plea of rescission, and that is what it is not.

The legal effect of the stipulations in the note respecting default in the payment of its installments, and whether the contract of insurance, if there was such a contract, contained similar

stipulations, and their effect therein, are all questions not now presented for decision. What we do now hold is that the first plea set forth a substantial defense; that the second plea, in connection with the first, set forth another substantial defense; and that the third defense should have been stricken on general demurrer.

*Judgment reversed on both bills of exceptions. Broyles, C. J., and Bloodworth, J., concur.*