17666. WELLS *et al.* v. HARTFORD FIRE INSURANCE COMPANY.

1. Where, after receiving an application for a policy of insurance, the company delayed acceptance for a long period and then tendered a policy different from that contemplated by the application, but where the applicant accepted the policy and, after discovery that it was not the kind ordered, made no offer to return it, but retained it, and several months later, when he was sued on a note for premiums, contended that the company had breached the policy by an alleged wrongful declaration that it was suspended for nonpayment of premiums, the insured will be held to have waived the delay of the company in accepting the application and also the nonconformity of the policy with that applied for.

2. "Where a policy of insurance is delivered and a premium-note taken, payable in installments, and stipulating that 'in case any one of the installments herein named shall not be paid at maturity, . . this policy shall lapse until payment is made,' letters from the company to the insured, calling his attention to a past-due installment and advising him that the policy stands suspended during the period of the delinquency, and that it can be reinstated only through the payment of the overdue installment, will be construed as the company's interpretation of the legal effect of the stipulation in the note, and not as a declaration of intention on its part to declare the contract rescinded." *Home Ins. Co.* v. *Swann*, 34 *Ga. App.* 19 (3) (128 S. E. 70).

(*a*) Furthermore, where a note for premiums on an insurance policy and the policy itself each provided, in effect, that the insurance should be suspended during the period in which any overdue installment of the

Fire Insurance, 26 C. J. p. 55, n. 26 New.
Insurance, 32 C. J. p. 1303, n. 23 New.
New Trial, 29 Cyc. p. 833, n. 61.

note was unpaid and where the insured was in default as to one of the installments, the act of the company in writing a letter to the insured declaring the policy "suspended" during the period of such default was not improper, and hence constituted no tender of a breach of the contract, even assuming that such act would have been sufficient to amount to such tender, if it had been wrongful as misstating the effect of the contract. Such letter was in accordance with the plain terms of the agreement and afforded no cause of complaint to the insured.

(*b*) This was a suit on a note for the second and subsequent annual premiums on a five-year policy of fire insurance. The defendant filed a plea of failure of consideration and also sought to recover an alleged unearned portion of the first annual premium which was paid in cash at the delivery of the policy. Under the above rulings, the evidence demanded the verdict which the court directed in favor of the plaintiff, no error was committed during the trial, and the court properly refused a new trial.

DECIDED MAY 12, 1927.

Complaint; from Lincoln superior court—Judge W. L. Hodges presiding. August 28, 1926.

*Clement E. Sutton,* for plaintiff in error.

*Burnside & McWhorter,* contra.

BELL, J. This was an action by the Hartford Fire Insurance Company, filed on July 3, 1923, against J. F. Wells and his wife, Lula Mae Wells, upon a promissory note for $154.96, payable as follows: $38.74 on the first day of May in each of the years 1922 to 1925 inclusive. The note was executed to cover the premiums for the second, third, fourth, and fifth years of two policies of fire insurance on property belonging to the defendants, the premium for the first year having been paid on delivery of the policies. The note contained a provision that if any one of the installments was not paid at maturity, "the whole amount of installments" then "remaining due on said policy may be declared earned, due and payable;" and the petition alleged that the defendants had made default in the first installment and that the plaintiff had declared the whole debt due and collectible. The defendant pleaded failure of consideration, based upon an alleged breach of the contracts on the part of the insurance company. After a directed verdict in favor of the plaintiff, the defendants brought the case here on exceptions to the overruling of their motion for a new trial, which contained the usual general grounds and also assigned error on the direction of the verdict and on the exclusion by the court of certain evidence.

As appears from the evidence, the insurance was applied for on

or about April 21, 1921. The application was in writing, signed by both defendants, and contained the following stipulations: "The foregoing is my own agreement and statement and is a correct description of the property on which indemnity is asked, and I hereby agree that insurance shall be predicated on such statement, agreement, and description, if this application is approved. . . This company shall not be bound by any act or statement made by or to any agent or other person which is not contained in this application. . . The use of any gasoline engine on the premises is prohibited unless the written consent of the company be obtained and attached to any policy which may be issued under this application." The policies were *dated* November 14, 1921, and the evidence authorized the inference that the application was not accepted or acted upon previously. On December 29, 1921, the policies were delivered to the defendants' agent, who in their behalf paid the first year's premium in cash, each of the policies purporting to insure the property from April 21, 1921. The note began with the statement that "The company is authorized to insert in this note the number and date of the policy," and, as ultimately filled up, contained a recital that it was executed "For value received, in Policy No. F. I. 5324 dated the 21st day of April, 1921, issued by The Hartford Fire Insurance Company, Hartford, Conn." It also stipulated that in case of default in the payment at maturity of any installment the company "shall not be liable for loss during such default and the said policy shall lapse until payment is made" to the company at its office in Atlanta. Each of the policies contained a similar stipulation referring expressly to the particular note.

The note did not show upon its face the date of its execution, but it seems to have been delivered to the company along with the application for the policies.

The defendants having, on May 1, 1922, defaulted in the payment of the first installment of the note, which, as already stated, was for the second annual premium, the company on June 1, 1922, wrote to the defendants a letter demanding payment and saying that "under rule of company your insurance was suspended [on May 1] due to nonpayment of premiums." On July 1, 1922, the company wrote to the defendants a letter which contained, among others, the following statement: "While it is true that our poli-

cies are suspended during the period of delinquency, the whole amount of the note has matured and by their terms became legally collectible. It is therefore for your best interest to pay now, thereby discharging a just obligation and at the same time reviving your policies as of date of such payment at this office and securing the protection they afford and which we believe you desire and need." The defendants contend that the insurance was not *effective* until the acceptance of the application, and that it was improper on the part of the company to include the clause which purported to make the policies effective from April 21, 1921, a date which materially preceded the acceptance of the application, and that by this act and by the further act of inserting such date in the note as the date of the policies, the company was seeking to collect an amount "not due on said policies of insurance as issued, and that said note was back dated without defendants' knowledge or consent, and that the same was and is a fraud on said defendants, and said note had no consideration therefore for such time."

It is a further contention of the defendants that since the policies were not effective until within less than a year prior to May 1, 1922, and that since the first premium was paid for a full year, the first installment of the note did not mature until the expiration of that period, notwithstanding the maturity date as specified in the note,—especially since the defendants did not know that the note and the policies were "backdated," until they received the company's letter of June 1, demanding payment of the first installment of the note and advising that the policies were suspended for nonpayment thereof.

The defendants further insist that since they were not in fact in default, the company had no right to declare the policies suspended, as in the letters of June 1 and July 1, 1922, referred to above, and that the writing of these letters amounted to a violation of the provisions of the policies, in that the company thus withdrew the insurance to which the defendants were entitled for the period of one year from the effective date of the policies, which period did not expire until after June 1, 1922, the date of the first letter declaring the insurance suspended.

The defendants sought to show that on the receipt of the letters, which they insist amounted to a breach of the contracts of insur-

ance, they elected to accept the breach, acted· upon it, and procured insurance in another company, as they were obliged to do in order .to prevent the acceleration of a loan which had been made to them upon the property by another party who required them to keep insurance on the same. The court rejected the evidence offered for the purpose of showing the procuring of such other insurance, and this ruling is assigned as error, but in our view of the case we may deal with it as though this evidence had been admitted.

Upon the theory of defense thus presented, the defendants sought to recover the alleged unearned portion of the premium for the first year, being the pro rata thereof which would have covered the period from the alleged breach of the contracts until the expiration of one year from the effective date thereof, and claimed upon the same theory that the consideration for the note had entirely failed.

1. It does not appear that the defendants ever offered to return the policies or to restore the status after the discovery that the policies were "backdated." On the contrary, even after the discovery of this fact they continued to treat the policies as valid, subsisting contracts, claiming that they had been breached by the company. They pleaded and now insist that they rescinded the contracts, not because of any fraud on the part of the company, but solely on account of the fact that the company declared the insurance suspended when it was not entitled to do so, and thus itself committed a breach which the defendants accepted. In these circumstances the defendants will be held to have waived any objections which they might otherwise have made to the form or character of the policies, or to the delay of the company in accepting the application. *Timmerman* v. *Stanley,* 123 *Ga.* 850 (2) (51 S. E. 760, 1 L. R. A. (N. S.) 379); *Jones* v. *Gilbert,* 93 *Ga.* 604 (20 S. E. 48); *Leigh* v. *Brown,* 99 *Ga.* 258 (25 S. E. 621); *Johnson* v. *White,* 120 *Ga.* 1010 (48 S. E. 426); *Caldwell* v. *Campbell,* 4 *Ga. App.* 326 (61 S. E. 290). And see further, in this connection, Bostwick *v.* Mut. Life Ins. Co., 116 Wis. 392 (67 L. R. A. 705, 89 N. W. 538, 92 N. W. 246); Summers *v.* Alexander, 30 Okla. 198 (120 Pac. 601, 38 L. R. A. (N. S.) 787); Evans *v.* Central Life Ins. Co., 87 Kan. 641 (125 Pac. 86, 41 L. R. A. (N. S.) 1130).

2. If the company's letters of June 1 and July 1, referred to in the above statement, amounted to a breach of the contracts of insurance, it seems that the defendants, on accepting such breach, would have been entitled to recover the unearned portion of the first year's premium which they had paid, and also to have a verdict in their favor on the plea of failure of consideration of the note. But the question of whether the act of the company in writing these letters amounted to such breach is controlled adversely to the defendants by the decision of this court in *Home Ins. Co.* v. *Swann,* 34 *Ga. App.* 19 (3) (128 S. E. 70). In that case it was held: "Where a policy of insurance is delivered and a premium note taken, payable in installments, and stipulating that 'in case any one of the installments herein named shall not be paid at maturity, . . this policy shall lapse until payment is made,' letters from the company to the insured, calling his attention to a past-due installment and advising him that the policy stands suspended during the period of delinquency, and that it can be reinstated only through the payment of the overdue installment, will be construed as the company's interpretation of the legal effect of the stipulation in the note, and not as a declaration of an intention on its part to declare the contract of insurance rescinded. That part of the plea which sets up no defense other than that the plaintiff had rescinded the contract of insurance by writing such letters should have been stricken on general demurrer." Furthermore, the note and the policies here all stipulated that in case of default in the prompt payment at maturity of any installment of the note, the company should not be liable for loss during such default. Assuming that the policies were not effective even until their delivery on December 29, 1921, and that the premium then paid should ordinarily have kept the policies in force until December 29, 1922, the insurance afforded thereby was nevertheless suspended as a result of the failure of the defendants to pay the installment which by the terms of the note matured on May 1st of that year. This installment, it is true, was to cover the premium during the second year of the life of the policies, but it was permissible for the parties to contract that this premium should be paid in advance, even as far in advance as from May 1 to December 29. Compare *Mut. Life Ins. Co.* v. *Stegall,* 1 *Ga. App.* 611 (58 S. E. 79). Since the note and the policies

each provided in effect that the insurance would be suspended during the period in which any overdue installment of the note was unpaid, and since the defendants were in default, the act of the company in writing the letters declaring the policies suspended "during the period of delinquency" was not improper or wrongful, but was in accordance with the plain terms of the agreement. *Darsey* v. *Ins. Co. of N. America,* 32 *Ga. App.* 458 (123 S. E. 622), and cit. The fact that the first year for which the premium was paid may not have expired until long after May 1, 1922, would not alone operate to extend the maturity date of the first installment beyond that expressly stipulated in the note as the date of maturity. The company was therefore within its rights in declaring that the policies were suspended; and, this being true, such declaration by it did not amount to a breach of the contracts. It follows that the defendants were not entitled to recover back any portion of the first year's premium, nor to defeat the collection of the note upon that ground. Under the authority to fill in the blanks, it was contemplated that the company would insert not merely the date from which the policies by their terms were declared to be effective, but rather the date on which the policies purported to have been issued, which was November 14, 1921. So it appears that there was a deviation from the authority to write into the note the date of the policies; and in the first division we do not go so far as to hold that this fact pertaining to the note was waived by those acts of the defendants which constituted implied waivers with respect to the policies. But whether such fact might have afforded any sort of defense under any circumstances, it clearly could not form the basis of a plea of failure of consideration; and no other defense was made.

It is unnecessary to determine when the policies became effective, but upon that question see *Firemans Fund Ins. Co.* v. *Rogers,* 108 *Ga.* 191 (33 S. E. 954); *Metropolitan Life Ins. Co.* v. *Thompson,* 20 *Ga. App.* 706 (93 S. E. 299). This case is distinguishable on its facts from *Home Ins. Co.* v. *Head, ante,* 779.

Under the above rulings, the verdict in favor of the plaintiff was demanded by the evidence, and the court did not err in giving direction accordingly. There was no merit in any of the special grounds of the motion for a new trial. The court did not err in overruling the motion.

*Judgment affirmed.    Jenkins, P. J., and Stephens, J., concur.*