18950.   KESLER *v.* COMMERCIAL CASUALTY INSURANCE COMPANY.

*Bryan & Middlebrooks, E. B. Everett Jr.,* for plaintiff.
*Harold Hirsch, Welborn B. Cody,* for defendant.

BELL, J.   Mrs. Georgia Anna Kesler brought suit against Commercial Casualty Insurance Company upon a policy of insurance issued by the defendant to the plaintiff's husband, insuring him against death by accident and naming the plaintiff as the beneficiary.   A general demurrer to the petition was sustained by the trial court and the plaintiff excepted.

The material facts alleged in the petition were as follows:   The insured applied for the policy on August 9, 1926, paying in advance $8 to cover the policy fee and the first monthly premium, each amounting to $4.   The policy was issued and delivered on August 10, 1926, and contained the following provisions:

"Commercial Casualty Insurance Company, Newark, New Jersey (hereinafter called the company), in consideration of the policy fee of four and 00/100 dollars and the monthly premium of four and 00/100 dollars, and of the statements in the application for this policy, a copy of which is endorsed hereon and made a part of this contract, does hereby insure Philip Joner Kesler, of Miami, Fla., herein referred to as the insured, a carpenter on buildings by occupation, subject to all conditions and limitations hereinafter contained and endorsed hereon, or attached hereto, from 12 o'clock noon, standard time at the place where the insured resides on the day this contract is countersigned, until 12 o'clock noon, such standard time, of the first day of September, 1926, and for such time thereafter as the premiums paid by the insured, as herein agreed, shall maintain this policy in force.

"After two months from date of issue or reinstatement after lapse, and so long thereafter as this policy is maintained in continuous force as provided by its terms, a grace of ten days will be allowed for the payment of monthly premiums, during which ten-day period the insurance hereunder, except as to the benefits granted under Part 3, shall continue in force subject otherwise to all of the terms and conditions of this policy.

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company or by any of its duly authorized agents shall reinstate the

policy, but only to cover accidental injury thereof sustained and such sickness as may begin more than ten days after the date of such acceptance.

"Any premium paid to the company for any period not covered by this policy will be returned upon request.

"This policy will continue in force, subject to its provisions, as long as the premium shall be paid as agreed herein, unless it is sooner terminated in accordance with its terms.

"Failure to comply with all the terms, conditions and provisions of this policy shall bar the right to recovery for any claim made hereunder."

In addition to the advance payment of $8 as above referred to, the insured paid and the company accepted on account of premiums $4 on September 4 and $12 on October 1, 1926. The insured died from accidental causes on January 13, 1927.

It is seen from the above statement that the entire amount paid by the insured upon premiums was $20. It is the contention of the plaintiff that this amount kept the policy in force for a period of five months from date of issue, or until January 10, 1927, and that with the ten-day period of grace added the policy was good until January 20, 1927; and that since the insured died prior to that date, the company was liable. On the other hand, it is contended by the defendant that, under the express terms of the contract, the first premium was intended to pay for insurance only until September 1, 1926, and that, after crediting the four subsequent monthly payments and allowing for the period of grace, the policy expired on January 10, 1927, three days prior to the insured's death. It is thus insisted on the part of the insurer that the policy lapsed before the happening of the event insured against, and hence that liability did not attach.

. Under the contentions just stated, the sole question for determination would be, whether the first premium, called a monthly premium, was intended to keep the policy in force for a full month, or merely for the space between August 10, the date of issue, and September 1 following, amounting to but twenty-one days.

The only provisions of the policy having reference to the amount of the premiums and the period of time to be covered by each respectively are in the recital of the consideration, coupled with whatever words of limitation may follow in that connection, and in the

stipulation as to grace, in which there is reference to "monthly payments." The reasonable intendment of the policy is that for monthly premiums in a certain sum the insured would be protected from month to month for as long as such premiums would maintain the policy in force. A monthly premium is such an amount as will buy insurance for a month, and if the payment of the first premium was to cover a period of only twenty-one days, then it was not a monthly premium and it would be a misnomer to call it such. The insistence of the defendant is in effect that the first premium amounting to $4, although termed a monthly premium, was not intended to be such in fact. There is nothing in the policy to show that one of the later premiums, any more than the first, should pay for a month's insurance, and yet the parties evidently did not intend that even as between themselves, and for the purposes only of the particular contract, a month should not be of the usual duration, but should be reduced to a period of twenty-one days. If the "monthly" premium paid in October was good for a month's insurance, why should the monthly premium in the same amount paid in August be of a lesser value? Admittedly, for no other reason than that the policy recites that in consideration of the payment thereof the company insured the holder (from August 10) until September 1. Is this a sufficient reason? We think not. It is noted that the policy does not state in express terms that for the initial payment the insurance was to be in force until September 1 *and no longer*. Such a construction would be inconsistent with the idea of a monthly payment as otherwise expressed in the policy, and would make the policy self-contradictory.

Aside from the clause just mentioned, there is nothing to indicate a distinction between the value of the first and the other premiums. The period-of-grace clause contains a reference in general terms to "monthly premiums," and was to become operative after two months from date of issue. Unquestionably, "two months" was intended here to mean two months, and not a month and twenty-one days; and yet it was hardly contemplated that the payment of more than two monthly premiums would be necessary to render the grace period available.

We can not agree with counsel for the insurer in the statement that there is neither inconsistency nor ambiguity in the written terms of the agreement. If we interpret the policy as saying in

one place that the first premium was to pay for insurance only until September 1, there is a plain contradiction in the language employed; and if this interpretation is not given, there is still such ambiguity as makes it necessary to examine the whole instrument for the purpose of ascertaining the intention of the parties. If a policy of insurance is susceptible of two constructions, the construction most favorable to the insured will be given effect. *Columbia Casualty Co.* v. *Rogers Co.*, 157 *Ga.* 158 (121 S. E. 224) ; *Penn Mutual Life Ins. Co.* v. *Milton,* 160 *Ga.* 168 (1) (127 S. E. 140, 40 A. L. R. 1382). If one provision of a policy is absolutely repugnant to another provision, the one most advantageous to the insured will be enforced, while the other provision will be ignored. *Clay* v. *Phœnix Ins. Co.*, 97 *Ga.* 44 (1), 52 (25 S. E. 417). We do not think it necessary, however, to apply this rule to the extent of altogether disregarding any of the terms of the policy involved in this case. In our opinion the reasonable and proper construction of the whole agreement is that each premium, the first as well as others, would buy insurance for the space of one month, but that the second premium should be due and payable on the first of September, 1926, this being ten days in advance, and that the subsequent premiums should be payable in like manner upon the first of each succeeding month thereafter. See, in this connection, *Wells* v. *Hartford Fire Ins. Co.*, 36 *Ga. App.* 789 (2) (138 S. E. 276) ; 32 C. J. 1196, 1309. As we have already pointed out, the policy, in providing that for the policy fee and the first premium the policyholder would be insured until the following September 1, does not in express terms limit the protection to the intervening period. The only colorable basis for such an inference is a negative pregnant, and this is entirely overcome by the natural import of the more direct provisions of the contract.

The policy took effect on August 10, and, for the first payment, was good for a month, or until September 10, although the second premium was due ten days before the expiration of that time. The other premiums paid by the insured carried the policy until January 10, 1927, and, the period-of-grace clause having now become operative, the policy would have continued in force until January 20 of that year. The insured having died from accidental cause on January 13, before the expiration of that period, the insurer became liable. *Ætna Insurance Co.* v. *Palmer,* 159 *Ga.* 371 (125

S. E. 829); *Parham* v. *National Relief Assurance Co.*, 33 *Ga. App.* 59 (125 S. E. 519); Stout *v.* Missouri Fidelity & Casualty Co. (Mo. App.), (179 S. W. 993); Fallis *v.* Mass. Bonding & Ins. Co., 210 Mo. App. 579 (243 S. W. 217); Lale *v.* Business Men's &c. Co. (Mo. App.), 275 S. W. 962; Landrigan *v.* Mo. State Life Ins. Co., 211 Mo. App. 89 (245 S. W. 382); Scholz *v.* Standard Accident Ins. Co., 145 Va. 694 (134 S. E. 728). Under the above construction, which might or might not be the proper one if the date of issue had been materially nearer to that fixed for the second payment, the payment of $4 on September 4, 1926, as the second monthly premium, was not made within the time stipulated; but irrespective of what might otherwise have been the effect of such default, the failure to pay the premium the full days in advance as stipulated in the policy appears to have been waived by the company, since the delayed payment, and the succeeding payment of $12 on October 1, 1926, were each accepted without question, and the policy was allowed to run as if all payments had been made strictly in accordance with the specific terms of the contract.

The present case is to be distinguished from that of *Mutual Life Ins. Co.* v. *Stegall*, 1 *Ga. App.* 611 (58 S. E. 79). In the instant case the policy was issued and delivered on August 10, and was immediately accepted by the insured, he having paid the policy fee and the initial premium in advance. In the *Stegall* case the facts were as follows: "The application was made on August 1; thirty days afterwards the policies were issued in New York, and bore date August 30, 1904, and carried insurance on the life of Stegall from that date, thus making the year of insurance end on August 30, 1905. It is true that the insured did not receive the policies until November 19, 1904, and it is equally true that the company was not bound, under the terms of the contract, until he had paid the premium and received the policies. He asked for the insurance on August 1, and agreed to accept the policies and pay the premiums when issued; the company accepted his application and furnished the contracts on August 30; he did not then receive them, but let them lie dormant until November 19; he then paid for them and accepted the policies as they stood, carrying insurance back from August 30, and stipulating that, to keep the policies in force, the next annual premium must be paid August 30, 1905.

He asked for no change, none was made; he knew what he received. His beneficiary stands today on the contracts containing these stipulations. Nothing can be clearer to our minds than that on failure to pay the annual premiums provided for, on August 30, 1905, the policies lapsed, and were not in force at the time of the death of the insured, October 29, 1905." In that case the insurer had accepted the application and was tendering insurance according to the terms thereof during the entire period from August 30 to November 19. It was the fault of the applicant that he was not insured in the meantime.

It follows from what has been said that the petition set forth a good cause of action in favor of the plaintiff and therefore was not subject to general demurrer.

But there is still another theory upon which the plaintiff was entitled to recover. Granting for the sake of the argument that the insurer is right in its contention that the first premium carried the policy only until September 1, the policy was nevertheless in force on January 13, 1927, in view of other provisions which we have not heretofore taken into consideration, nor referred to except in the statement of facts. Under the construction insisted upon by the insurer, the policy would have lapsed at noon of September 1, since the payment of the second premium was not made until September 4. In the interim the insured was not protected, because he had not paid for insurance for this period; whereas the policy provided that it would continue in force subject to its provisions as long as the premiums should be paid as agreed, and that failure to comply with all the terms and conditions thereof should bar the right to recover for any claim made thereunder. *Plumer* v. *Continental Casualty Co.,* 12 *Ga. App.* 594 (1) (77 S. E. 917); Mutual Fire Co. *v.* Maple, 60 Or. 359 (119 Pac. 484, 38 L. R. A. (N. S.) 726). If the policy had lapsed, which must have been the case if the position taken by the insurer is the proper one, then payment on September 4 and its acceptance by the company automatically operated as a reinstatement, under the stipulation in regard to that subject as set forth in the above statement. Such reinstatement would not be retroactive so as to cover the period of such suspension. Fallis *v.* Mass. Bonding & Ins. Co., 210 Mo. App. 579 (243 S. W. 217), supra; 1 C. J. 412; 32 C. J. 1357. The policy expressly provides that "any premium paid to the company for any

period not covered by this policy will be returned upon request." The reinstatement became operative either on the acceptance of the second premium on September 4 or at the expiration of the "more than ten days after the date of such acceptance." Further than this, it is unnecessary to determine from what time under the instant contract the reinstatement should be calculated. If the policy should be deemed to have been revived on September 4, the premium paid on that date, together with the $12 paid on October 1, kept the policy in force as reinstated until January 4, 1927, and, the reinstatement having occurred more than two months previously, the period-of-grace clause again came to the rescue, continuing the policy until January 14, which was one day after the insured's death. On the other hand, if the reinstatement should be held to date only from the expiration of the "more than ten days after" the acceptance of the second premium, then the policy ran to a date beyond the insured's death, irrespective of the ten-day-grace period. So we are of the opinion that even if the insurer should be correct in its contention as to the value and effect of the first premium, it would necessarily follow that the policy should be treated as having been reinstated, and that under its terms as a reinstated agreement it was in force at the time of the insured's death.

The court erred in sustaining the general demurrer and dismissing the petition.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*