## BROOKS v. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.

No. 14019.  FEBRUARY 16, 1942.

526

*Fraser & Irwin,* for plaintiff.

*MacDougald, Troutman & Arkwright* and *Robert S. Sams,* for defendant.

MOORE, Judge. (After stating the foregoing facts.)

Count 1 of the petition alleges that the insured paid the premiums in accordance with the terms of the policy, except the

one which fell due on March 4, 1931, which was not paid within the grace period allowed by the policy, as follows: "A grace of 31 days, during which time the insurance will remain in full force, shall be allowed for the payment of every premium except the first;" that upon default in payment of premium the amount of the policy was extended automatically as non-participating term insurance for 2 years and 209 days from the date of default, which, it is alleged, occurred at the end of the grace period; and, the insured having died on October 27, 1933, that the policy was in force as extended term insurance at the time of his death. The policy itself defines default. The provision for extended term insurance is: "Upon default in payment of premium, unless paid within the grace period," extended term insurance will automatically result. The clause relating to participating paid-up insurance in lieu of extended insurance, if the insured should elect to take the same, begins: "Upon written request of the insured, and assigns, if any, made prior to the *default in the premium payment* or within the grace period." It follows, therefore, that under the provisions of the policy, default in payment of the premium due on March 4, 1931, resulted when payment was not made on that date, and not at the end of the grace period of 31 days; and that at the time of the death of the insured on October 27, 1933, the policy had lapsed, and there was no insurance in force at the time of the death of the insured.

The policy dated March 4, 1929, provided: "This policy and the application therefor . . constitute the entire contract between the parties." The application for the insurance provided, that "if the premium for the insurance hereby applied for is not paid to the agent at the time of making the application, no insurance shall be effected and no liability shall exist unless and until a policy as applied for is issued and delivered to the applicant and the first premium thereon actually paid during his lifetime." It is alleged, that subsequently to the issuance of the policy the insured, on May 2, 1929, applied for a different form of policy, as follows: "I hereby request the Northwestern Mutual Insurance Company to issue, upon my application dated February 12, 1929, a policy on the ordinary life plan, with waiver of premium contract attached, in all other respects the same as originally issued;" that the policy thus applied for, dated March 4, 1929, was not de-

livered until May 23, 1929, which, by reason of the provisions of said application and policy, became the effective date of the policy; that the period for which insurance was actually paid was two years subsequent to May 23, 1929; and that the extended term insurance provided for in the policy and application ran from May 23, 1931, for two years and 209 days, and was in full force and effect at the date of the death of the insured, October 27, 1933.

In *Mutual Life Insurance Co.* v. *Stegall,* 1 *Ga. App.* 611 (58 S. E. 79), the insurance policy was dated August 30, 1904, and required payment of the annual premiums in advance on August 30. The policy was accepted and the first premium paid on November 19, 1904. No premium thereafter was paid. The insured died on October 29, 1905. The court held that the contention that acceptance of the policy on November 19, 1904, had the effect of continuing the policy in full force for one year from that date was unsound as a matter of law. The stipulation in the application, to the effect that the contract to be issued thereunder should not take effect until the first premium was paid, being for the benefit of the insurer, the insured, having accepted the policy and paid the premium thereon, was bound by the provisions of the policy as to payment of premiums.

The *Stegall* decision was approved in *Kesler* v. *Commercial Casualty Insurance Co.,* 39 *Ga. App.* 197 (146 S. E. 506), where it was said that in the *Stegall* case "the insurer had accepted the application and was tendering insurance according to the terms thereof during the entire period from August 30 to November 19. It was the fault of the applicant that he was not insured in the meantime." This construction of the policy is in harmony with the weight of authority in other jurisdictions. The general rule, as declared in Wilkie *v.* New York Mutual Life Insurance Co., 196 N. C. 513 (60 S. E. 427), is "that where a policy expressly specifies the date on which it is to take effect, and the date on which recurring premiums are due and payable, such date must be held controling regardless of the date on which the policy is delivered, and notwithstanding the reservation that the insurance is not effective until the policy is delivered and the first premium paid." Pace *v.* New York Life Insurance Co., 219 N. C. 451 (14 S. E. 2d, 411-14), and numerous cases annotated in 6 A. L. R. 774, and 32 A. L. R. 1253; Wilkinson *v.* Commonwealth Life Insurance Co. (Ky. App.), 197 S. W. 557.

The case of *Parham* v. *National Relief Assurance Co.*, 33 *Ga. App.* 59 (125 S. E. 519), was decided on the theory that the policy contained conflicting provisions, and the court applied the rule that in such case that construction most favorable to the insured would be adopted; the policy there involved being a monthly renewable policy, and providing that the insured was insured from twelve o'clock noon of March 28, 1921, until twelve o'clock noon of May 1, 1921, and for such periods stated in the renewal receipts as the renewal premium of $3.72 per month paid by the insured would maintain the policy in force.

Count 2 of petition claims, (a) that the policy ran from the date of delivery, May 23, 1929; and (b) that through error and mistake the policy was dated March 4, 1929; and prays that the policy be so reformed as to conform to the date of delivery; that by proper decree the policy be declared to be dated May 23, 1929. The application for change in the form of the contract, referring to the policy as originally issued March 4, 1929, asks that an ordinary life plan policy be issued on the original application of February 12, 1929, "in all other respects the same as originally issued." It does not appear that the policy as subsequently issued was not in accordance with the application for change in the form of the policy, and "in all other respects the same as originally issued." The insured accepted the policy as thus issued, paid two yearly premiums thereon, and never made any complaint as to the form of the contract. It is the beneficiary named in the policy who now asks for a reformation of the contract, notwithstanding the acceptance and retention of the policy by the insured. The beneficiary did not contract with the insurer, and her rights under the policy did not become absolute so long as the insured lived; the policy having been issued "with reservation to the insured of the right of revocation and change of beneficiary." The petition alleges only that the policy was dated March 4, 1929, "through error and mistake, when it should have borne the date of May 23, 1929."

"In all cases of a mistake of fact material to the contract or other matter affected by it, if the party complaining applies within a reasonable time, equity will relieve." Code, § 37-206. But "Equity will not reform a written contract, unless the mistake is shown to be the mistake of both parties" (§ 37-207); nor will

it do so if the party could by reasonable diligence have ascertained the truth as to the matter concerning which the mistake was made. *Keith* v. *Brewster,* 114 *Ga.* 176 (39 S. E. 850). Error and mistake, without being mutual, is insufficient. Where it is sought to reform a contract based on a mutual mistake, the petition must allege the particular mistake, and show how it occurred. In *Frank* v. *Nathan,* 159 *Ga.* 202, 208 (125 S. E. 66), this court said: Even "if mistake is relied on, it must be distinctly charged and stated with precision, the particular mistake being shown, and how it occurred. In other words, the pleader should state why the terms of the actual contract happened to be left out, and how the terms not agreed on came to be inserted. 23 R. C. L. 361." See *Helton* v. *Shelnut,* 186 *Ga.* 185 (197 S. E. 287); *Crim* v. *Alston,* 169 *Ga.* 852 (151 S. E. 807). If the beneficiary has the right to prosecute this suit for reformation, that right would not be broader than the right of the insured if the suit had been brought by him at the time this suit was filed.

"Where a policy of life insurance which was duly delivered to an applicant differed in any material respect from the kind of policy for which he had contracted, it was his duty, if he did not desire to retain and accept the policy received by him, to return or offer to return the same within a reasonable time to the company, or an agent thereof authorized to receive it." *Leigh* v. *Brown,* 99 *Ga.* 258 (25 S. E. 621); *Johnson* v. *White,* 120 *Ga.* 1010 (2) (48 S. E. 426); *Wells* v. *Hartford Fire Insurance Co.,* 36 *Ga. App.* 789 (138 S. E. 276). "Equity will not lend its aid to reform a written contract because of mistake as to its contents on the part of a complaining party who was able to read, and fraud of the other party which consisted only in making false representations as to such contents, on which the complaining party relied as true because of confidence in the party making them, no confidential relation existing between the parties, and no sufficient excuse appearing why the complaining party did not read the instrument." *Green* v. *Johnson,* 153 *Ga.* 738 (113 S. E. 402). In this case it does not appear that any fraud was practiced or any confidential relation existed. It is not alleged that the policy as issued is different from the kind of policy applied for. The insured accepted the policy on May 23, 1929, paid the premiums thereon, and retained it without objection or criticism as long as

he lived; and it was only after his death that the question of fraud or mistake was raised by the beneficiary under the policy.

The judgment dismissing the action on demurrer is

· *Affirmed. All the Justices and Judges concur, except Humphries, J., absent because of illness.*