**MIDDLE GEORGIA NEUROLOGICAL SPECIALISTS, P.C., et al., Plaintiffs–Appellees, Cross–Appellants,**

v.

**SOUTHWESTERN LIFE INSURANCE COMPANY, Defendant–Appellant, Cross–Appellee.**

No. 90–8651.

United States Court of Appeals, Eleventh Circuit.

Nov. 4, 1991.

Richard H. Sinkfield, Linda Owens Vinson, Rogers & Hardin, Atlanta, Ga., for defendant-appellant, cross-appellee.

Charles M. Cork, III, Reynolds & McArthur, Macon, Ga., for plaintiffs-appellees, cross-appellants.

Before HATCHETT and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.

DUBINA, Circuit Judge:

In this diversity action, Southwestern Life Insurance Company ("Southwestern") appeals the district court's grant of summary judgment in favor of Middle Georgia Neurological Specialists, P.C. ("MGNS"), Piper Cohn, Matthew Cohn, Gary Potts, and L. Gail Cohn and Piper L. Cohn as co-administrators of the estate of Perry L. Cohn (sometimes collectively referred to as "the beneficiaries"). The district court found that Southwestern was obligated to pay life insurance proceeds under two policies insuring the life of Dr. Perry L. Cohn ("Dr. Cohn"). The beneficiaries cross-appeal the district court's denial of prejudgment interest on the proceeds.

Because both issues presented by this appeal involve questions of state law implicating substantial public policy concerns and because we are unable to locate any clear, controlling precedents in the decisions of the Georgia courts that are dispositive of these issues, we believe both issues are appropriate for resolution by the Supreme Court of Georgia. We therefore defer our decision in this case pending certification of the questions to the Supreme Court of Georgia. *See Varner v. Century Finance Co.*, 720 F.2d 1228 (11th Cir.1983).

We submit the following for consideration by the Supreme Court of Georgia.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO ARTICLE VI SECTION VI PARAGRAPH IV OF THE GEORGIA CONSTITUTION.

TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF:

## I. *Style of the Case*

The style of the case in which this certificate is made is as follows: Middle Georgia Neurological Specialists, P.C., et al., Plaintiffs/Appellees/Cross–Appellants, versus Southwestern Life Insurance Company, Defendant/Appellant/Cross–Appellee (D.C. Docket No. 1:89–CV–1281–RLV). This case is assigned number 90–8651 in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Northern Division of Georgia.

## II. *Statement of the Facts*

On November 10, 1987, Dr. Cohn signed two applications for life insurance with Southwestern. One application was for a $3,500,000 policy, with the beneficiaries designated as follows: "$500,000 to Piper Cohn, son; $500,000 to Matthew Cohn, son; $500,000 to Gary Potts, business partner; balance to Estate." The other application was for a $2,500,000 policy, with MGNS designated as the beneficiary. Except for the face amounts and the beneficiaries, the pertinent provisions of the applications and policies are identical. The applications contain the following language:

(1) Each and every statement and answer in this application is complete, true, and correctly recorded, to the best of my knowledge and belief.... (3) If an Agreement with Respect to Advance Premium Payment has not been issued,[1] the policy will be effective when it is delivered to and accepted by the Applicant only if (a) the first premium has been paid, and (b) all answers recorded in this application represent without material

change complete and true answers to the same questions as if they were asked at the time of delivery of the policy applied for, to the best of my knowledge and belief. (4) This application and the policy issued are the entire contract. No agent or medical examiner may pass upon insurability, modify the contract, or waive any of the company's rights or requirements....

Dr. Cohn underwent a physical examination in mid-December during which blood tests were performed; however, the results were not forwarded to Southwestern and it was not until March 11, 1988, that a satisfactory blood analysis was obtained and provided to Southwestern. On March 25, Southwestern's representative in Atlanta, Georgia, informed Stanley Rosen, Dr. Cohn's insurance agent ("Rosen"), that the policies had been approved by underwriting, and directed Rosen to secure a check from Dr. Cohn for $10,000, representing the initial monthly premium of $5,000 for each policy. On March 28, Rosen went to Dr. Cohn's office, obtained the check, and transmitted it that day to Southwestern by an express mail service.

Rosen received the policies from Southwestern on April 6. They were issued on March 30, and each provides: "The policy date is the effective date for all coverage provided in the original application." The policy date noted on each policy was March 28, 1988. Subsequent premiums were due on the 28th of each month.

Each of Dr. Cohn's policies was also accompanied by a letter to Rosen which states as follows:

Enclosed is the above-mentioned policy. Please have the statement on the reverse side of this letter attested to by the Applicant.

You are authorized to deliver this policy if the Applicant confirms that the statement is true and complete when applied to each person to be insured under such policy.

If the Applicant cannot so confirm those facts, then the policy must be returned to

---

1. No agreement with respect to advance premium payment was issued in this case.

946 F.2d—20

the Underwriting Department along with sufficient information regarding the situation. Further consideration will then be given to the proper issuance of the policy.

On the reverse side of each letter was a Policy Delivery Health Certificate which states as follows:

> I agree that on the date shown below answers to questions on my original application and medical examination, if made in connection with the application, pertaining to the health, habits, and occupation of each person to be insured under this policy represent without material change true and complete answers to the same questions as if asked me today.

Rosen attempted to contact Dr. Cohn to obtain his signature on the health certificates and deliver the policies, but discovered that Dr. Cohn was out of the country on vacation. Dr. Cohn died suddenly on April 8. An autopsy revealed the presence of substantial heart disease and a healed myocardial infarction which was at least six weeks old. The pathologist opined that the likely cause of Dr. Cohn's death was cardiac arrhythmia.

The beneficiaries initially filed their complaint for insurance proceeds pursuant to the two policies in the Superior Court of Fulton County, Georgia. Southwestern removed the case to the United States District Court for the Northern District of Georgia. After completion of discovery, the parties filed cross-motions for summary judgment. The district court granted the beneficiaries' motion, denied Southwestern's motion, and entered judgment in favor of the beneficiaries which included an award of prejudgment interest. Southwestern filed a motion to alter or amend the judgment and for reconsideration, which the district court granted in part to reverse its award of prejudgment interest but denied in all other respects.

### A. The motions for summary judgment

Southwestern argues that the policies issued to Dr. Cohn never became effective because only one of the conditions precedent to the formation of those contracts was ever fulfilled, namely, the payment of the first premium. In addition, the contracts required that Dr. Cohn's answers regarding his health on the applications "represent without material change" answers to the same questions "as if" they were asked on delivery of the policies, and that the policies be delivered to and accepted by Dr. Cohn.

Southwestern contends that the policies were rendered ineffective because Rosen was not able to obtain confirmation from Dr. Cohn that no material change had occurred in his health between the date on which the applications were signed and the date on which the policies were received. The district court concluded that Dr. Cohn's signatures on the health certificates were immaterial to the formation of the contracts. The district court reasoned that since the applications state that the "entire contract" consists of the application and the policy issued, the letters containing the requirement that the health certificates be signed are not a part of the contracts, and there is nothing in either the applications or the policies which requires that such a certificate be executed. The district court also determined that, assuming Dr. Cohn had been available on April 6 to acknowledge to Rosen that there were no changes to his answers to the application questions, no action was required of him by the contract.[2] It was only the health certificates which required signature and return, and since they were not a part of the contract documents, they had no bearing on the formation of the contracts in this case.

Southwestern also contends that Rosen's inability to deliver the policies to Dr. Cohn as required by the contracts invalidates coverage. Nevertheless, the district court

---

**2.** Southwestern maintains that a material issue of fact existed regarding whether Dr. Cohn knew that he had suffered a heart attack in the interim between his application for and the issuance of the policies. The district court found

that Southwestern had not produced any evidence indicating that Dr. Cohn was aware of the myocardial infarction discovered during the autopsy.

held that if an insurance policy expressly stipulates an effective date, that date controls. The district court relied on *Brooks v. Northwestern Mut. Life Ins. Co.*, 193 Ga. 522, 18 S.E.2d 860 (1942), wherein the Supreme Court of Georgia stated as follows:

> [W]here a policy expressly specifies the date on which it is to take effect and the date on which recurring premiums are due and payable, such date must be held controlling, regardless of the date on which the policy is delivered, and notwithstanding the reservation that the insurance is not effective until the policy is delivered and the first premium paid.

18 S.E.2d at 864 (quoting *Pace v. New York Life Ins. Co.*, 219 N.C. 451, 14 S.E.2d 411, 414 (1941)). The policies at issue provide that coverage became effective on the "policy date," which each policy states is March 28, 1988, and the district court concluded that Southwestern could not rely on its delivery requirement to invalidate express policy language.

Notwithstanding the foregoing, we note that Georgia law expressly provides that "[a] contract of insurance may be conditioned upon the issuance and delivery of the policy to the applicant." *Georgia Int'l Life Ins. Co. v. Bear's Den, Inc.*, 162 Ga. App. 833, 292 S.E.2d 502 (1982). A distinguishing feature between *Brooks* and the case before us is that the insurance policy at issue in *Brooks* was delivered. In *Newton v. Gulf Life Ins. Co.*, 55 Ga.App. 330, 190 S.E. 69, 70 (1937), the court opined that "the application for insurance is not finally accepted and the insurance put into effect until the policy is delivered to the applicant in good health on the date of the policy or thereafter."

### B. The motion for reconsideration

The district court initially granted prejudgment interest pursuant to O.C.G.A. § 7–4–15 (1989), which provides that all liquidated demands "bear interest from the time the parties shall become liable and bound to pay them." In its motion for reconsideration, Southwestern persuaded the district court that its award of prejudg-

ment interest was error, arguing that the district court should have applied O.C.G.A. § 33–25–10 (1990), which states as follows:

> (a) Each insurer admitted to transact life insurance in this state shall pay interest on proceeds or payments under any individual policy of life insurance....
>
> (b) Interest payable pursuant to subsection (a) of this Code section shall be computed from the insured's death until the date of payment....
>
> (c) This Code section shall not:
>
> > (1) Apply to proceeds under any such policy paid within 30 days after the date of death of the insured;
> >
> > (2) Require the payment of interest in an amount of less than $5.00;
> >
> > (3) Apply to policies of credit life insurance;
> >
> > (4) Require the payment of interest for any period during which an insurer is required to pay interest under any state or federal law pertaining to interpleader;
> >
> > (5) Apply to any individual policy issued within 12 months of the death of the insured.

The beneficiaries argue that § 33–25–10 merely supplemented § 7–4–15 relative to interest payable on life insurance proceeds. Since § 33–25–10 is inapplicable to insurance policies issued within twelve months of the insured's death, the beneficiaries claim the courts must look to § 7–4–15 to determine prejudgment interest in that circumstance. Southwestern argues that § 33–25–10 superseded § 7–4–15 relative to the payment of interest on life insurance proceeds. Since Dr. Cohn died within twelve months of the issuance of the policies, Southwestern claims that no prejudgment interest is due in this case pursuant to § 33–25–10(c)(5). The district court determined that Southwestern's position was the better reasoned, granted Southwestern's motion for reconsideration in part, and declined to award prejudgment interest.

### III. Questions to be Certified to the Supreme Court of Georgia

■ (1) Under the facts of this case, when the insurance policy application es-

tablished the policy's delivery to and acceptance by the applicant as a condition precedent to the formation of the insurance contract, but the issued policy specified a date certain on which coverage was said to be effective and from which future premium payments were to be calculated, is the failure of actual delivery of the policy of insurance fatal to contract formation so as to render the coverage ineffective?

■ (2) When insurance proceeds are paid within twelve months of the insured's death, does O.C.G.A. § 33–25–10 excuse the payment of prejudgment interest, or should prejudgment interest be determined pursuant to O.C.G.A. § 7–4–15 in that circumstance?

Our statement of the questions is not designed to limit the inquiry of the Supreme Court of Georgia.

> [T]he particular phrasing used in the certified question[s] is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given....

*Martin v. Rodriquez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968).

The entire record in this case, together with copies of the briefs of the parties, is transmitted herewith.

QUESTIONS CERTIFIED.