952 F.2d 1297
 FLORIDA INTERNATIONAL INDEMNITY COMPANY, Plaintiff-Appellee,
v.
The CITY OF METTER, GEORGIA, Defendant-Appellee,
The Metter/Candler County Recreation Department, Myron
Colley, Defendants,
Juanita Googe, Individually and as Temporary Administratrix
of the Estate of Kenneth Harold Googe, Deceased, Harold
Googe, Jr., Shirley Diane Sparks, Andrew Ray Googe, Howard
Michael Googe and Linda Kay Googe, Defendants-Appellants.
 No. 90-8302.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 6, 1992.
 
 Michael K. Gardner, Barnard M. Portman, Paul H. Felser, Savannah, Ga., for Googe.
 D. Campbell Bowman, Jr., Stanley M. Karsman, Savannah, Ga., for Florida Intern. Indem. Co.
 Glen A. Cheney, Cheney & Cheney, Reidsville, Ga., for City of Metter, Candler County Recreation Dept.
 Appeal from the United States District Court for the Southern District of Georgia; Dudley H. Bowen, Jr., District Judge.
 Before ANDERSON, Circuit Judge, and TUTTLE and CLARK*, Senior Circuit Judges.
 CLARK, Senior Circuit Judge:
 
 
 1
 The resolution of this appeal requires us to certify two questions of law to the Supreme Court of Georgia concerning the standing of persons injured by municipalities to sue for reformation of municipal liability insurance contracts. Before reaching this issue, we will dispose of the other issues raised by this case.
 
 
 2
 The City of Metter owned a pool that the Metter/Candler County Recreation Department operated and in which a boy, Kenneth Harold Googe, was drowned in June 1986. Googe's survivors sued the City of Metter, claiming that a lifeguard, Myron Colley, was negligent in leaving his station and was the proximate cause of the injury.
 
 
 3
 The Georgia courts eventually held that the City was not liable, because the Recreation Department was not its agent and the pool was not a joint operation between the City and the Recreation Department. The complaint was then amended to include the Recreation Department, which the Georgia courts found not liable under the doctrine of sovereign immunity, unless the Recreation Department was insured.
 
 
 4
 Florida International Indemnity Company had issued a policy to the City for insurance coverage between October 30, 1985 and September 30, 1986. Florida International, a non-resident of Georgia, sought a declaratory judgment in federal court that it was not liable to indemnify the Recreation Department for its negligence, if any, for the drowning because the City was the only named insured under the policy.[1] The City filed a response supporting Florida International's position.[2]
 
 
 5
 The district court found that the Recreation Department was not covered under the terms of the policy and that Googe's survivors could not have the contract reformed to include the Recreation Department.
 
 
 6
 Googe's survivors have raised three issues in this appeal: (1) Whether a case or controversy was presented by Florida International's declaratory judgment action? (2) Whether the district court erred in failing to find that the Recreation Department qualified as an "other insured" under the terms and conditions of the policy? (3) Whether the district court erred in failing to reform the insurance contract to cover the Recreation Department and Myron Colley? We find that the third issue requires us to certify certain questions to the Supreme Court of Georgia. Before framing the certificate, we dispose of the first two issues. After receipt of the answers to the certified questions, assuming the Supreme Court of Georgia accepts the questions, no other issues will be before this court.
 
 I.
 
 7
 The essence of the first issue is that, because Florida International sued the City and the Recreation Department, and the City and the Recreation Department did not oppose the suit, the case was not sufficiently adversarial. However, at the time the suit was filed the Georgia courts had not yet found the Recreation Department to be conditionally immune from suit, and Googe's survivors successfully intervened and opposed Florida International based on their own adverse interests. The district court properly took jurisdiction.[3]
 
 II.
 
 8
 The Googe survivors next argue that the insurance contract covered the Recreation Department, as the contract states, "Each of the following is an insured under this insurance to the extent set forth below: ... (d) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured...." They contend that, while the Recreation Department was not managing all of the City's real estate, it clearly was managing the real estate of the pool grounds.
 
 
 9
 The contractual language cited by Googe's survivors may be relevant to the question of whether the parties to the contract intended to insure the operations of the swimming pool. However, an examination of the pleadings before the district court indicates that this issue was not raised below. The claim is therefore waived.[4]
 
 III.
 
 10
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR
 
 THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF
 GEORGIA PURSUANT TO ARTICLE VI, SECTION
 VI, PARAGRAPH IV OF THE
 
 11
 GEORGIA CONSTITUTION.
 
 
 12
 TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:
 
 
 13
 It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves questions of Georgia law that are determinative of the cause but unanswered by controlling precedent of the Supreme Court of Georgia or any other Georgia appellate court. We therefore certify the questions for resolution by the Supreme Court of Georgia.
 
 A. STYLE OF THE CASE
 
 14
 The style of the case in which this certificate is made is as follows: Florida International Indemnity Company, Plaintiff-Appellee, versus The City of Metter, Georgia, Defendant-Appellee, The Metter/Candler County Recreation Department, Myron Colley, Defendants, Juanita Googe, Individually and as Temporary Administratrix of the Estate of Kenneth Harold Googe, Deceased, Harold Googe, Jr., Shirley Diane Sparks, Andrew Ray Googe, Howard Michael Googe, and Linda Kay Googe, Defendants-Appellants, Case No. 90-8302, filed in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Southern District of Georgia.
 
 B. STATEMENT OF ADDITIONAL RELEVANT FACTS
 
 15
 In addition to the facts set out above concerning the coverage of the swimming pool, we note that the City requested coverage for the pool and disclosed that the pool was operated jointly with the Metter/Candler County Recreation Department. Florida International's underwriter stated that he intended to cover the pool when he wrote the policy and that Florida International collected a premium for insuring the pool.[5] Prior to the issuance of the policy in question, the Recreation Department had maintained a separate liability insurance policy, but the coverage was apparently dropped when the City received its coverage from Florida International. The executive secretary of the Recreation Department stated that her understanding was that the Recreation Department and the pool were covered by the City's policy.[6] After Kenneth Googe's drowning, Florida International set up a reserve fund to cover the loss and paid money totaling $1,759.00 into the reserve.[7]
 
 
 16
 Georgia law provides that "[a]n honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when the mistake operates as a gross injustice to one and gives an unconscionable advantage to the other, may be relieved in equity."[8] The district court found that there was a mutual mistake in this case. The district court wrote,
 
 
 17
 The Googe defendants claim that it was the intent of the parties at the time the contract of insurance was entered into that the risks attendant to operating the pool where Kenneth Googe drowned be covered under the policy. The Googe defendants have presented substantial evidence that such was the case.... It appears that at the time the parties entered into the insurance contract they believed that the pool was a joint operation between the City, which owned the facilities, and the Department, which operated them. It further appears that the plaintiff charged and collected (without hesitation) a premium based upon the risk attendant to the pool's operation. Both the deposition of the underwriter and the City's application for insurance indicate this.[9]
 
 
 18
 However, the district court refused to reform the contract, finding that Googe's survivors were not parties to the contract, and thus no party suffered a "gross injustice" under the Georgia statute.
 
 C. REASONS FOR CERTIFICATION
 
 19
 Although no case is clearly on point, our understanding of Georgia's third-party beneficiary doctrine leads us to believe that Googe's survivors may have sufficient standing to ask for reformation of the contract.
 
 
 20
 Georgia courts have long followed a general policy of forbidding suits against insurers by parties who are not at least third-party beneficiaries of insurance contracts, that is, non-parties to insurance contracts who hold legally enforceable rights thereunder.[10] It is arguable that a suit by injured persons such as the Googe plaintiffs against liability insurance companies for recovery come within the scope of Georgia's holdings with respect to intended third party beneficiaries.[11] This policy is justified by the rationale that injured persons receive only an "incidental benefit" from the payment of claims by tortfeasors' insurance companies, as opposed to payment by tortfeasors themselves.[12]
 
 
 21
 However, when a judgment against the insured already has been achieved, an injured person may sue the tortfeasor's insurance company directly.[13] The Georgia courts have also allowed suit directly against liability insurers in the case of certain kinds of mandatory liability insurance, reasoning that third-party beneficiary rights have been created in the public.[14] An enigma is created by the unique facts of this case combined with Georgia sovereign immunity law which permits a judgment against a municipality only if, and to the extent of, liability insurance. This is discussed infra.
 
 
 22
 Once parties have achieved the status of at least third-party beneficiaries, courts in Georgia and elsewhere have determined that they may also sue for reformation. Georgia cases indicate that third-party beneficiaries of life insurance contracts may be able to seek reformation against insurance companies.[15] Georgia precedent also reflects that it may be appropriate for a third party to an automobile insurance policy to seek reformation in the case of mutual mistake as to the owner of the automobile.[16] We hesitate in determinatively finding that third-party beneficiaries of liability contracts may seek reformation in Georgia, in part because of Georgia decisions from the first half of this century (not much cited since) indicating that privity of contract is required to support an action for reformation.[17]
 
 
 23
 Other state courts have held that third-party beneficiaries may sue insurance companies for reformation of liability contracts. For example, in Binswanger v. Employers' Liability Assurance Corp.,[18] a Missouri court held that an injured person who tripped on a wire in front of a funeral home could seek to have the funeral home's liability coverage reformed to reflect the insured's true name. At the time the suit was instituted, the funeral home had gone into bankruptcy and all of its assets had been distributed. In Binswanger, the policy contained a provision providing for suit against the insurance company in case of bankruptcy; the plaintiff had sued the funeral home but the judgment was returned unsatisfied. The court found that the plaintiff was a third-party beneficiary of the liability contract. The court wrote:
 
 
 24
 It is difficult to imagine how the rights of Fleeman-McNeill Funeral home can be adversely affected by a reformation of the policy. No effort is being made to change the contract but merely to cause the evidence of the contract, the writing, to speak the truth. Plaintiff being entitled to sue upon the contract was entitled to the benefit of the true contract and was, therefore, entitled to have the evidence of that contract corrected.[19]
 
 
 25
 Other state courts have found that third-party beneficiaries of liability insurance contracts may sue to reform liability contracts.[20] Applying Florida law in a diversity action, this court has found that third-party beneficiaries may sue to reform fire insurance contracts.[21] It thus appears that a number of jurisdictions do find it appropriate to allow third-party beneficiaries to reform insurance contracts.[22]
 
 
 26
 We have not been able to discover any Georgia law on the specific question before us: Whether persons injured by municipalities have sufficient beneficial interests to be allowed to respond to an insurer's suit for declaratory judgment by seeking reformation of municipal liability insurance contracts, where no action would otherwise lie. Despite Georgia's general rule that liability claimants are not third-party beneficiaries of liability contracts, sound judicial policy may indicate that suits directly against liability insurers of local government entities for the sole purpose of reformation should be allowed.
 
 
 27
 This is so because the operation of Georgia's sovereign immunity laws may create sufficient beneficial interests in those who are injured by Georgia's local government entities to allow them to sue for reformation. A provision of the Georgia constitution of 1983 waived the sovereign immunity of the state and its departments and agencies, including municipalities, to the extent of the coverage of any liability insurance.[23]
 
 
 28
 A sufficient beneficial interest in injured persons may be thus created by such liability insurance contracts so as to allow suit for reformation because, without the insurance, injured persons must go remediless. Given the waiver of sovereign immunity for municipalities with liability insurance, it perhaps may not be claimed by liability insurance companies that injured persons receive only an "incidental benefit" from the existence of municipal liability insurance. Such persons' rights to come into court and to seek redress are governed completely by the question of whether tortfeasor governmental entities have procured insurance. The very act of seeking insurance by an entity that possesses conditional sovereign immunity confers a fundamentally important benefit upon the public--the right to sue--that is far beyond any "incidental benefit" derived from the payment of claims by insurance companies. The evidence in this case indicates that both the City of Metter and the County Recreation Department intended that the operation of the pool be insured for liability coverage.
 
 
 29
 Moreover, Georgia's conditional immunity policy appears to bring persons injured by municipalities within the traditional definition of third-party beneficiaries:
 
 
 30
 In order for a third party to have standing to enforce a contract ... it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient.[24]
 
 
 31
 Municipal liability insurance contracts create a right in the public to sue and accordingly constitute the equivalence of a legislative statement that the public may sue the government for negligence. By procuring liability insurance, municipalities assume a legal obligation to defend themselves from those they have injured.[25] Thus, it would seem that it "clearly appear[s]" from all municipal liability contracts that they are intended for the public's benefit and that those injured by municipalities may be third-party beneficiaries of such contracts, at least for purposes of reformation.[26]
 
 
 32
 Tortfeasors whose liability policies do not provide coverage as the result of a mutual mistake of law or fact normally have strong incentives to seek reformation of the faulty contract themselves.[27] But because the right to sue municipalities is conditioned on the existence of liability insurance, it would seem necessary to allow injured persons to sue insurance companies directly for reformation. Otherwise, persons who are injured by municipalities may find that they are without recourse as a result of drafting errors in municipalities' insurance contracts. Because municipalities may benefit from such errors, in that they are able to avoid completely the hassle, stigma, and higher premiums resulting from being sued, municipalities may not have the requisite interest to seek reformation of unartfully drawn liability contracts themselves. Although the contract is one paid for by the public, neither the insured nor the insurer may have adequate incentives to protect the public good.[28] This would seem to be just such a case. It therefore may be wise public policy to allow injured persons to act as "private attorneys general" and to seek reformation of public liability insurance contracts.
 
 
 33
 Having found no Georgia decisions on this point, we conclude that it is an open question of Georgia law whether a person injured by a municipality has a beneficial interest in the municipality's liability contract sufficient to provide standing to seek reformation.[29] We accordingly certify the following questions.
 
 D. QUESTIONS TO BE CERTIFIED
 1.
 
 34
 Are the Googe survivors third-party beneficiaries of the City of Metter's municipal liability insurance policy?
 
 2.
 
 35
 If so, may they seek reformation of the insurance policy as third-party beneficiaries?
 
 
 36
 Our formulation of these questions is not intended to restrict the consideration by the Supreme Court of Georgia of the issues involved.[30]
 
 
 37
 The Clerk of the Court is directed to transmit this certificate, as well as the entire record and the briefs of the parties, to the Supreme Court of Georgia. Pending that Court's answers to the preceding questions, all further proceedings in this appeal are STAYED.
 
 
 38
 QUESTIONS CERTIFIED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 [1]
 Named as defendants were the City of Metter, Metter/Candler County Recreation Department, Juanita Googe, individually and as administratrix of the Estate of Kenneth Harold Googe, and other Googe family members
 
 
 [2]
 R1-22
 
 
 [3]
 See, e.g., Associated Gen. Contractors of Am., Inc. v. Laborers Int'l Union, Local 612, 476 F.2d 1388, 1402-03 (Temp.Emer.Ct.App.1973) (after intervention, case became sufficiently adversarial)
 
 
 [4]
 See R1-26-5 (District Court Order) ("Thus, the only issue is whether the contract of insurance between the City and plaintiff should be reformed to add as an insured the Department."); see, e.g., Pearson v. Ecological Science Corp., 522 F.2d 171, 179 (5th Cir.1975) (refusing to reach issue not raised in district court), cert. denied, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976)
 
 
 [5]
 R1-15 (Googe's survivors' "Rule 6.6 Statement of Facts") (quoting deposition of underwriter Byrd, at 68)
 
 
 [6]
 R1-18-9-10
 
 
 [7]
 R1-15 (Googe's survivors' "Rule 6.6 Statement of Facts") (quoting deposition of underwriter Byrd, at 66)
 
 
 [8]
 Ga.Code Ann. § 23-2-22; see also Ga.Code Ann. § 23-2-23 ("A mistake of law by the draftsman or other agent, by which the contract, as executed, does not fulfill or violates the manifest intention of the parties to the agreement, may be relieved in equity."); Ga.Code Ann. § 23-2-24 ("In all cases of a mistake of fact material to the contract or other matter affected by it, if the complaining party applies within a reasonable time, equity will grant relief.")
 
 
 [9]
 R1-26-5 & n. 1
 
 
 [10]
 See Westbrook v. Nationwide Ins. Co., 113 Ga.App. 299, 147 S.E.2d 819, 821 (1966) ("An action on a policy of insurance--or on a written binder--must be brought in the name of the holder of the legal title thereto." (citations omitted)); see also Sherrill v. Louisville Title Ins. Co., 134 Ga.App. 322, 214 S.E.2d 410 (1975) (holding that borrower was not third-party beneficiary of lender's title insurance and could not maintain suit on insurance contract). More generally, beneficiaries of contracts may not seek to enforce contracts from which they were not specifically intended to benefit. See, e.g., Kaiser Aluminum & Chemical Corp. v. Ingersoll-Rand Co., 519 F.Supp. 60, 72 (S.D.Ga.1981) ("The law of Georgia has not been anxious to find that parties not in privity can sue under the aegis of the third party beneficiary doctrine. Under Georgia law, a plaintiff must be an intended rather than an incidental beneficiary and it must clearly appear from the contract itself that both contracting parties intended to benefit the third party." (citations omitted))
 
 
 [11]
 See, e.g., Smith v. Government Employees Ins. Co., 179 Ga.App. 654, 347 S.E.2d 245, 245 (1986) ("[A]n injured person not in privity of contract with the insurance company cannot reach the proceeds of the policy for payment of his claim by means of an action directly against the insurer." (citations omitted)); Public Nat'l Ins. Co. v. Wheat, 100 Ga.App. 695, 112 S.E.2d 194, 197-98 (1959) ("In the absence of policy provisions to the contrary, one who suffers injury is not in privity of contract with the insurer under a liability insurance policy and cannot reach the proceeds of the policy for the payment of his claim by an action directly against the insurer." (citation omitted))
 
 
 [12]
 See Insured Lloyds v. Bobo, 116 Ga.App. 89, 156 S.E.2d 518, 520 (1967) ("The fact that Wagon Masters, the party with whom the plaintiff was dealing, had insurance might inure to the benefit of the plaintiff, but no more so than the fact that it might be more beneficial to one who is injured by another that such tortfeasor was carrying liability insurance than if the tortfeasor had no insurance."); Murray v. Life Ins. Co., 107 Ga.App. 545, 130 S.E.2d 767, 769 (1963) ("[T]he fact that the plaintiff receives an incidental benefit from the insurance, i.e., the payment of the balance of his indebtedness upon the happening of the specified events, [does not] alter the fact that the right of action is not vested in the plaintiff.")
 
 
 [13]
 See Smith, 347 S.E.2d at 246
 
 
 [14]
 See Griffin v. Johnson, 157 Ga.App. 657, 278 S.E.2d 422, 424 (1981) ("[A] member of the public who is injured by the negligence of a motor common carrier need not obtain a judgment against the carrier as a condition precedent to bringing suit against the carrier's insurer...."); Krasner v. Harper, 90 Ga.App. 128, 82 S.E.2d 267, 273 (1954) (holding that plaintiff injured by county school bus could sue county's insurer directly because of mandatory liability insurance; "[T]o all intents and purposes the insureds are, under the statute, the school children and the members of the general public."); see also Cotton States Mut. Ins. Co. v. Starnes, 260 Ga. 235, 392 S.E.2d 3, 5 n. 2 (1990) ("Mandatory liability insurance ... has the effect of creating two classes of third-party beneficiaries: additional insureds and the public.")
 
 
 [15]
 See Brooks v. Northwestern Mut. Life Ins. Co., 193 Ga. 522, 18 S.E.2d 860, 865 (1942) ("If the beneficiary has the right to prosecute this suit for reformation, that right would not be broader than the right of the insured if the suit had been brought by him at the time this suit was filed."); Thomas v. Union Fidelity Life Ins. Co., 168 Ga.App. 267, 308 S.E.2d 609, 611 (1983) (the beneficiary of a life insurance application "contends she is entitled to equitable reformation of the contract (application) 'in accord with the agreement and representation of [appellee's] agents.' However, since there was no valid written binder or policy of insurance between the appellee and the deceased, the remedy of equitable reformation is inappropriate." (brackets in original)), aff'd, 252 Ga. 259, 312 S.E.2d 333 (1984). See generally 17 M. Rhodes, Couch on Insurance § 66:128, at 412 (2d rev. ed. 1983) (characterizing Brooks; "A beneficiary has a right to bring an action for reformation of a life policy...." (citation omitted))
 
 
 [16]
 Westbrook v. Nationwide Ins. Co., 113 Ga.App. 299, 147 S.E.2d 819, 821 (1966) (dismissing third party's claim concerning an automobile insurance policy; "No attempt has been made to seek an equitable reformation of the contract on the ground of mutual mistake." (citation omitted))
 
 
 [17]
 See Hilton v. Hilton, 202 Ga. 53, 41 S.E.2d 880, 881 (1947) ("Primarily, the right to reform a contract belongs to the original parties thereto. The recognized extension under the Code in favor of those in privity with the original contractors does not mean that the terms of a contract can be altered and reformed by one who does not claim as a successor under the contract sought to be reformed...." (citations omitted)); see also Rawson v. Brosnan, 187 Ga. 624, 1 S.E.2d 423, 424-25 (1939) (same). But see 4 A. Corbin, Corbin on Contracts § 778, at 29 (1951) ("In the light of modern development, it must be supposed that the absence of 'privity' is not a sufficient reason for denying a remedy, inasmuch as [a third-party beneficiary] has been given one in thousands of cases without reference to 'privity.' The mystery of 'privity' remains; but it is no longer of much interest because court action is not much influenced by it.")
 
 
 [18]
 224 Mo.App. 1025, 28 S.W.2d 448 (1930)
 
 
 [19]
 Id. 28 S.W.2d at 454
 
 
 [20]
 See, e.g., Alderson v. Insurance Co. of N. Am., 223 Cal.App.3d 397, 404, 273 Cal.Rptr. 7, 11-12 (1990) ("The [injured persons'] rights, if any, under the policy are derived from the judgment [they] had obtained against [the tortfeasor], and thus, the [injured persons], as third party beneficiaries under the policy, are entitled to bring this action and to challenge the reformation of the policy." (citations omitted)); Magnus v. Barrett, 197 Ill.App.3d 931, 145 Ill.Dec. 482, 485, 557 N.E.2d 252, 255 (1990); Eschle v. Eastern Freight Ways, Inc., 128 N.J.Super. 299, 319 A.2d 786, 787 (1974); Purcell v. Metropolitan Cas. Ins. Co., 260 S.W.2d 134, 142 (Tex.Civ.App.1953) ("Purcell ... has the right to seek a reformation of the policy along with his son. Such right would obtain under the theory that he was a third party beneficiary thereto, in privity at least as to interest, by and through his son...." (citations omitted)); British Am. Assurance Co. v. Shores, 206 Okla. 300, 243 P.2d 343 (1952). See generally Annotation, Reformation of Automobile Liability Insurance Policy by Adding to or Substituting for the Named Insured the Person Intended to be Insured, 1 A.L.R.3d 885 (1965). But see Malone v. United States Fidelity & Guar. Co., 1987 WL 18107, * 1 (Del.Ch.1987) ("Plaintiff seeks to have the policy reformed as a third-party beneficiary. In cases very similar to the present action, the Superior Court has repeatedly held that the right of reformation of an insurance policy ... belongs solely to the insured." (citation omitted))
 
 
 [21]
 See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co., 420 F.2d 1211, 1214-15 (5th Cir.1969) ("[W]e believe that when an insurer and its customer agree that the insurer is to insure the owner of specified property against fire loss, it would be no less unconscionable to allow the insurer to avoid its obligation under their contract because the owner, whose particular identity is of no particular concern to the insurer, is incorrectly named in that contract than to allow such avoidance because the insurer in preparing the policy acted unmindful of facts it either knew or should have known."); see also Bolling v. Westchester Fire Ins. Co., 309 F.Supp. 4, 7 (E.D.Tenn.1969) (holding that a third-party beneficiary of an automobile insurance contract was in vicarious status to the named insured and could sue for reformation of an insurance contract that erroneously named a vehicle that no longer was operable)
 
 
 [22]
 Cf. Reagor v. Travelers Ins. Co., 92 Ill.App.3d 99, 47 Ill.Dec. 507, 415 N.E.2d 512 (1980):
 As a beneficiary of a liability insurance policy, an injured person has rights under the policy which vest at the time of the occurrence giving rise to his injuries.... The injured person must be given the opportunity to litigate the question of coverage under the liability insurance policy before his interest in the insurance may be terminated. Thus, where an insurer brings a declaratory judgment action to determine coverage of a claim made against its insured, the injured person is a necessary party to the suit, and the injured person may appeal from a judgment that there is no coverage.
 
 
 [47]
 Ill.Dec. at 509, 415 N.E.2d at 514 (citations omitted). See generally 4 A. Corbin, supra note 17, § 807, at 134-35 (Supp.1991) ("Even if a state follows the rule that a liability claimant is not a 'third party beneficiary' of a liability policy [as does Georgia], the result [in Reagor ] is right. If the claimant has any legally recognized interest, that should entitle him to seek a declaratory judgment as to the extent of policy coverage." (emphasis in original))
 
 
 [23]
 Ga. Const. art. I, § 2, p 9 ("[T]he defense of sovereign immunity is waived as to those actions for the recovery of damages for any claim against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided but only to the extent of any liability insurance provided."); see also Ward v. Bulloch County, 258 Ga. 92, 365 S.E.2d 440, 441 (1988) ("The county is not required to purchase liability insurance and is entitled to sovereign immunity in the absence of insurance...."); Robinson v. City of Decatur, 253 Ga. 779, 325 S.E.2d 752, 754 (1985) (Clarke, J., specially concurring) (municipal sovereign immunity for operation of swimming pools and other activities waived after January 1, 1983, if municipality possesses liability insurance); Martin v. Georgia Dep't of Pub. Safety, 257 Ga. 300, 357 S.E.2d 569, 571 (1987) (adopting Justice Clarke's special concurrence in Robinson), cert. denied, 484 U.S. 998, 108 S.Ct. 685, 98 L.Ed.2d 638 (1988); Stryker v. City of Atlanta, 738 F.Supp. 1423, 1431 (N.D.Ga.1990) (interpreting Martin; "The Supreme Court [of Georgia] concluded that the 1983 Constitution unequivocally expressed the citizens' desire that individuals harmed by actions of the state be compensated if insurance is available.")
 
 
 [24]
 Backus v. Chilivis, 236 Ga. 500, 224 S.E.2d 370, 372 (1976) (citations omitted)
 
 
 [25]
 See 13 S. Williston, A Treatise on the Law of Contracts, § 1547, at 119 (3d ed. W. Jaeger 1970) ("If the parties to the contract did intend to confer upon the third person a right against the promisor, or the promisor intended by such agreement to assume a legal obligation to the third person, these would be indicative of the intent of the parties to benefit the third person." (emphasis added; footnote and internal quotations omitted))
 
 
 [26]
 See cases cited supra note 13; cf. Arnold v. Walton, 205 Ga. 606, 54 S.E.2d 424, 428 (1949) (holding, in a case prior to conditional waiver of sovereign immunity, that clause in municipal insurance contract preventing insurer from escaping liability by operation of "any statute" did not make the public third-party beneficiaries; "There is nothing in this provision conferring any benefits upon the public; and, we think, there is nothing in this provision which estops the insurance company, as against the plaintiff in this litigation, from raising the question of the immunity of the county to suit.")
 
 
 [27]
 See, e.g., Georgia Farm Bureau Mut. Ins. Co. v. Wall, 242 Ga. 176, 249 S.E.2d 588 (1978) (suit by insured for reformation of contract)
 
 
 [28]
 See 4 A. Corbin, supra note 17, § 807, at 136 (Supp.1991) ("Insurers and insureds tend to feel an 'us' against 'them' attitude towards liability claimants. There is very often a close relationship between the company and its insured, an attitude of cooperation for their mutual benefit directed against the claimant who has attacked them both, attacked the insured by disparaging his competence ... and attacked the insurer by trying to lighten its pocketbook.")
 
 
 [29]
 But see Coburn v. City of Dyersburg, 774 S.W.2d 610, 612 (Tenn.Ct.App.1989) (refusing to find injured person to be third-party beneficiary of governmental liability contract)
 
 
 [30]
 See Martinez v. Rodriquez, 394 F.2d 156, 159 n. 6 (5th Cir.1968)